2000 UT 53

Gary W. COLEMAN, dba Coleman
Mobile Home Court, Plaintiff
and Appellee,

v.

Michael C. THOMAS and Harry
S. Thomas, Defendants and
Appellants.

Nos. 981638, 981660.

Supreme Court of Utah.

June 23, 2000.

Walter T. Merrill, Ogden, for plaintiff.

Wendy F. Fenton, Brigham City, for Michael Thomas.

Frank G. Smith, Ogden, for Harry Thomas.

RUSSON, Associate Chief Justice:

¶ 1 Defendants Michael Thomas and Harry Thomas, residents in plaintiff Gary Coleman's mobile home park, appeal from the trial court's order denying their motion for a new trial. After a bench trial, the court held that the Mobile Home Park Residency Act did not prevent Coleman from terminating the Thomases' lease without cause.

## BACKGROUND

¶ 2 On May 21, 1993, Michael Thomas signed an agreement with Gary Coleman to lease a mobile home space in Coleman's mobile home park. The lease agreement stated in pertinent part:

> The term shall begin on Jan. 1, 1993 and continue ... on a month to month basis. Until tenant shall terminate by giving owner 15 days notice prior to the end of rental period, or owner shall terminate by giving tenant 15 days notice prior to end of Rental period.

Michael Thomas then occupied a mobile home owned by his father, Harry Thomas, on the space leased from Coleman.

¶ 3 On June 12, 1996, Coleman mailed to Michael Thomas a notice stating:

> The terms of the Contract you signed with me is [sic] on a month to month rental basis.
>
> This agreement can be terminated by the renter giving a 30 day notice to the owner. The agreement also can terminate by the owner giving the tenant a 30 day

notice. (In 1993 when you signed the agreement it was 15 days it is now 30)

> This is a 30 day notice to vacate this Mobile Home Court.

The notice did not specify a reason for terminating the lease, but ordered Michael Thomas to remove the mobile home from Coleman's mobile home park by August 1, 1996. Harry Thomas received a similar notice from Coleman on July 31, 1996, again ordering that the mobile home be removed by August 1, 1996.

¶ 4 After receiving the two notices, the Thomases continued to reside in the mobile home. In addition, they continued forwarding monthly rental payments to Coleman, who returned each payment with a statement that the lease agreement had terminated on August 1, 1996.

¶ 5 On October 2, 1997, Coleman filed a complaint alleging that the lease had terminated and seeking an order of restitution, damages, and costs. Coleman also alleged in his complaint that the Thomases failed to comply with park rules and that their behavior endangered other residents of the park.

¶ 6 After a trial was held, the court entered judgment on behalf of Coleman. In its findings of fact and conclusions of law,[1] the trial court stated that Coleman was entitled to terminate the lease with thirty days' notice, and that Coleman "properly terminated" the lease effective September 1, 1996. The court did not address whether the Thomases complied with park rules or endangered other residents. Concluding that the Thomases were in unlawful detainer pursuant to Utah Code Ann. § 78–36–3 (1996), the court awarded Coleman (1) treble damages for rent due from September 1, 1996, until the Thomases quit the premises; (2) attorney fees and costs; and (3) restitution of the mobile home space.

¶ 7 The Thomases filed a motion for a new trial and stay of order of restitution, contending that the Mobile Home Park Residency Act ("MHPRA"), Utah Code Ann. §§ 57–16–1 to –15.1 (1994 & Supp.1999), precluded

---

1. The trial court issued "findings of fact and judgment" which included the court's conclu-

sions of law.

Coleman from terminating the lease without cause. The trial court denied the motion for a new trial but stayed execution of the restitution order pending an appeal of the court's decision. The trial court reasoned that the MHPRA did not apply in this case because Coleman did not actually "terminate" the lease. Rather, the court explained, the month-to-month lease agreement "naturally expire[d] at the end of the month, thus leaving no lease to terminate." The court stated that the MHPRA "applied to a *termination* of a lease rather than the *expiration* of a lease," and thus did not preclude Coleman from evicting the Thomases without cause after the lease "expired."

¶ 8 The Thomases now appeal, contending that (1) this case falls within the purview of the MHPRA, (2) Coleman was not entitled under the MHPRA to terminate the lease without cause, and (3) the notices they received did not comply with the MHPRA because they failed to state a cause.

## STANDARD OF REVIEW

■■■ ¶ 9 We review the trial court's legal conclusions for correctness. *See Meadowbrook, LLC v. Flower*, 959 P.2d 115, 116 (Utah 1998). Moreover, "when interpreting a legislative enactment, our primary role is to give effect to the legislature's intent as set forth in the statute's plain language." *State v. McCoy*, 2000 UT 39, ¶ 9, 393 Utah Adv. Rep. 17, 999 P.2d 572. We do not look beyond a statute's plain language unless it is ambiguous. *See Evans v. State*, 963 P.2d 177, 184 (Utah 1998).

## ANALYSIS

### I. APPLICABILITY OF THE MHPRA

¶ 10 The first issue we must resolve is whether the trial court correctly concluded that the MHPRA is inapplicable in the instant case. The MHPRA, by its plain language, declares that "[a] mobile home park

or its agents may not terminate a lease or rental agreement upon any ground other than as specified in this chapter." Utah Code Ann. § 57–16–4(1) (Supp.1999). Thus, the MHPRA governs acts by a mobile home park owner to terminate a lease within a mobile home park. We therefore must determine whether Coleman "terminate[d] a lease or rental agreement."

¶ 11 We begin by briefly examining the two most common types of tenancy that can be created with a residential lease agreement: periodic tenancy and term-of-years tenancy.[2] *See* 4 *Thompson on Real Property* § 39.02(c), at 492 (David A. Thomas ed., 1994). Two important differences exist between these two forms of tenancy: the duration of the tenancy and the manner in which the tenancy is terminated. *See id.* at 491–92.

■■■ ¶ 12 A term-of-years tenancy lasts for the term specified in the lease agreement. *See* Restatement (Second) of Property § 1.4 cmt. d (1977). At the expiration of the specified term, the tenancy automatically terminates. *See id.* cmt. e. No notice by either party is needed to terminate the tenancy unless the lease agreement provides otherwise. *See id.;* 2 Richard R. Powell, *Powell on Real Property* § 16.03[7][a] (1994).

■■■ ¶ 13 A periodic tenancy, in contrast, involves a continuous succession of "periods"—one-month periods in the case of a month-to-month lease—and lasts for an indefinite time. *See* Restatement (Second) of Property, *supra* ¶ 12, § 1.5 cmt. c. Periodic tenancy does not terminate and renew itself at the beginning of each period; rather, each new period is simply an extension of the original period. *See id.;* 2 *Powell on Real Property, supra* ¶ 12, § 16.04[1]. Moreover, "periodic tenancies never expire automatically because they are continuous by definition." 4 *Thompson on Real Property, supra* ¶ 11, § 39.06(b)(1), at 526. A periodic tenancy may be terminated only when one party gives proper notice to terminate it. *See* Re-

---

**2.** While important differences exist among the terms "lease," "lease agreement," "leasehold," and "tenancy," authorities often use these terms interchangeably. *See, e.g.,* Restatement (Second) of Property §§ 1.4, 1.5 (1977); 2 Richard R. Powell, *Powell on Real Property* § 16B.05 (1996).

The trial court's attempt to distinguish between the termination of a "lease" and the termination of a "tenancy" is immaterial to whether Coleman's action in the instant case falls within the purview of the MHPRA.

statement (Second) of Property, *supra* ¶ 12, § 1.5 cmt. f.

¶ 14 The foregoing discussion exposes the fundamental flaw in the trial court's reasoning. The court reasoned that the month-to-month lease "naturally expired at the end of each month," taking Coleman's action outside the scope of the MHPRA, which deals with "terminating" a lease. This is not the case. A month-to-month lease, or any other periodic tenancy, does not simply *"expire,"* as the court concluded. As discussed above, it must be *"terminated,"* and it is the act of giving notice that triggers the termination of the lease.[3]

¶ 15 The lease agreement and notices concede this point. The lease agreement states that the Thomases' rental shall continue "[u]ntil tenant shall *terminate* by giving owner 15 days notice prior to the end of rental period, or owner shall *terminate* by giving tenant 15 days notice prior to end of rental period." (Emphasis added.) Similarly, the notice to Michael Thomas stated: "This agreement can be *terminated* by the renter giving a 30 day notice to the owner. The agreement also can *terminate* by the owner giving the tenant a 30 day notice." (Emphasis added.) In addition, the notice to Harry Thomas was labeled *"termination* of lease or rental agreement."  (Emphasis added.)

¶ 16 Thus, when Coleman gave the notices to the Thomases, he was indeed taking action to "terminate a lease or rental agreement." His actions therefore invoke the application of the MHPRA.

## II. TERMINATION OF THE LEASE WITHOUT CAUSE

¶ 17 We must next determine whether the MHPRA precluded Coleman from terminating the lease without cause. The MHPRA

limits the grounds for terminating a lease as follows:

(1) An agreement for the lease of mobile home space in a mobile home park may be terminated *by mutual agreement* or *for any one or more of the following causes:*

(a) failure of a resident to comply with a mobile home park rule ... after receipt of a notice of noncompliance from the mobile home park ...;

(b) repeated failure of a resident to abide by a mobile home park rule ...;

(c) behavior by a resident which substantially endangers the security and health of the other residents or threatens the property in the park;

(d) nonpayment of rent, fees, or service charges;

(e) a change in the land use or condemnation of the mobile home park or any part of it.

Utah Code Ann. § 57–16–5(1) (Supp.1999) (emphasis added). If a park owner elects to terminate a lease for any of these stated causes, the park owner must first provide proper notice to the resident, which must include, among other requisites, *"cause* for the notice." *Id.* § 57–16–6(2) (emphasis added). Moreover, the MHPRA dictates that "[n]o park or resident may agree to waive any right, duty, or privilege" that the MHPRA confers. *Id.* § 57–16–12 (1994).

¶ 18 In light of the plain language of the MHPRA, it is clear that absent a mutual agreement to terminate the lease, cause is necessary to terminate a lease for a mobile home space. As the plain language of section 57–16–5 makes clear, a "mutual agreement" involves an agreement to *terminate* the lease, not an antecedent agreement as to the *manner* in which the lease may be terminated, as occurred in the instant case. The MHPRA forbids a park resident to

---

**3.** While the trial court's reasoning is not entirely clear, the one case on which the trial court relied, *Lincoln Warehouses, Inc. v. Crompton,* 441 Pa.Super. 419, 657 A.2d 994 (1995), has no application to the case before us. *Crompton* involved a *term-of-years* lease with a fixed lease term that had already expired. *See id.* at 995. As discussed above, a term-of-years lease terminates at the end of the fixed term without notice. The *Crompton* court held that Pennsylvania's mo-

bile home statute did not apply after the fixed term expired because the lease had automatically terminated. *See id.* at 996. In the instant case, in contrast, we have a month-to-month lease that is ongoing and continuous. The issue presented for our review is the extent to which the MHPRA limits a park owner's ability to terminate a month-to-month lease. We do not address today the MHPRA's effect upon a term-of-years lease— during or after the expiration of the lease term.

waive these protections and requires a park owner seeking to terminate a lease to provide notice that sets forth a cause listed in the statute.[4]

¶ 19 Our conclusion is in harmony with the overall purpose of the MHPRA, codified when the MHPRA was enacted, which states:

The fundamental right to own and protect land and to establish conditions for its use by others necessitate[s] that the owner of a mobile home park be provided with speedy and adequate remedies against those who abuse the terms of a tenancy. The high cost of moving mobile homes, the requirements of mobile home parks relating to their installation, and the cost of landscaping and lot preparation necessitate that the owners of mobile homes occupied within mobile home parks be provided with protection from actual or constructive eviction. It is the purpose of this chapter to provide protection for both the owners of mobile homes located in mobile home parks and ... the owners of mobile home parks.

*Id.* § 57–16–2. Indeed, protecting against termination without cause serves the twofold purpose of protecting both park residents and park owners. The cause requirement prevents a park owner from terminating residents' leases at whim and forcing them to undergo great expense uprooting their homes, along with their footings, skirting, decks, and landscaping, and attempting to

---

4. While we find the language of the MHPRA plain and unambiguous and thus do not rely on the legislative history of the MHPRA for our decision, a review of the legislative history confirms the intent of the legislature to prohibit park owners from terminating their residents' leases without cause. Although the MHPRA has been substantially revised since its enactment in 1981, it provided at that time, as it does today, that a lease may be terminated only by mutual agreement or for cause. *Compare* Mobile Home Park Residency Act, ch. 178, § 5, 1981 Utah Laws 997, 999–1000, *with* Utah Code Ann. § 57–16–5 (Supp.1999).

In 1997, section 57–16–4 of the MHPRA was amended to permit a park owner to terminate a lease without cause on sixty days' notice. *See* Mobile Home Tenant Amendments, ch. 114, § 1, 1997 Utah Laws 396, 396. However, that amendment was repealed shortly thereafter by House Bill 1001 at a special legislative session that same year. *See* Mobile Home Resident Amendments ch. 1, § 1, 1997 Utah Laws (1st S.S.) 1757, 1757. In the discussion that took place on the House floor during the special session, certain members of the legislature expressed their understanding of the intent of House Bill 1001. Representative Lloyd Frandsen, the sponsor of the bill, explained:

Now, the problem. There was [a] provision [in the first 1997 amendment], that I think a lot of us just didn't know what the consequences would be. And that was, at the end of a lease—if you wanted to terminate a lease, you had to give at least 60 days notice. All of the other things I've talked about require—in the event of termination, require a cause. You have to have a cause. This is an exception. It's not put in that part of the code that deals with causes [section 57–16–5]. So in other words, ... you could say, I'm giving a 60 days' notice and you better be out of here, and they don't give a reason why. That's the problem.

The "problem" with the 1997 amendment to the MHPRA was that it added a provision to section 57–16–4 permitting a park owner to terminate a lease without cause. In addition, as Representative Frandsen explained, the legislature amended section 57–16–4 without altering the language in section 57–16–5 that required cause. Thus, after the original 1997 amendment, the MHPRA contradicted itself, both permitting and forbidding the termination of a lease without cause. House Bill 1001 resolved the contradiction by repealing the added language in section 57–16–4 and returning the MHPRA to its earlier state.

The legislature emphasized that House Bill 1001 satisfied the MHPRA's twofold purpose of protecting park residents from actual or constructive eviction while providing speedy remedies to park owners. Representative Byron L. Harward explained in this regard:

[T]his is a very difficult balancing process, to balance the right of the park owner to control their property, to have an attractive place for people to move to, and the right of the tenant to know that when they are going to make that kind of investment, they have some confidence that they are going to get value for it.... Owners ought to have the right to evict. They ought to be able to control the visitors. They ought to be able to keep the quality of their park up. And they can make rules on all of those things. And if someone violates the rules they can be evicted. It's just the question of, do we let them evict for no reason or for a surreptitious reason. Let's have it be a good reason, a reasonable cause. That's the way the statute is written, that's the way the balance is done.

Representative Frandsen concluded, "And what we need to do in this particular case is go back to what was originally intended and take out that section in the law that includes that particular provision."

secure another lease elsewhere. The protection that the MHPRA provides to a park owner is the power to "promulgate rules related to the health, safety, and appropriate conduct of residents and to the maintenance and upkeep of such park," *id.* § 57–16–7(1)(a) (Supp.1999), and to terminate a resident's lease if the resident fails to abide by any of the park rules, *see id.* § 57–16–5(1). Thus, while the MHPRA protects a park resident from sudden, unjustifiable eviction, it provides a park owner speedy remedies against a tenant who violates reasonable rules.

¶ 20 Furthermore, Utah is not alone in placing restrictions upon a park owner's ability to terminate a resident's lease. Most states have enacted similar statutes protecting mobile home park residents from eviction or lease termination without cause, including nearly every western state. *See* Alaska Stat. § 34.03.225 (Lexis 1998); Ariz.Rev.Stat. Ann. § 33–1476 (West 2000); Cal. Civ.Code § 798.56 (West Supp.2000); Colo.Rev.Stat. § 38–12–203 (1999); Idaho Code § 55–2010 (1994); Mont.Code Ann. § 70–24–436 (1999); Nev.Rev.Stat. Ann. § 118B.200 (Lexis 1998); N.M. Stat. Ann. § 47–10–5 (Michie 1999); Or.Rev.Stat. § 90.630 (1997); Wash. Rev. Code § 59.20.080 (Supp.1999). These statutes have been routinely upheld and enforced by state appellate courts, which cite the importance of protecting mobile home park residents from the expense, difficulty, and unfairness of being required to move solely at the whim of park owners. *See, e.g., Osness v. Dimond Estates, Inc.,* 615 P.2d 605, 607–08 (Alaska 1980); *Lindquist v. Hart,* 1999 Ariz.App. LEXIS 193, at \*5–\*6, 1999 WL 711048; *Greening v. Johnson,* 53 Cal.App.4th

1223, 62 Cal.Rptr.2d 214, 215 (1997); *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218, 1223 (Colo.1982); *Post Falls Trailer Park v. Fredekind,* 131 Idaho 634, 962 P.2d 1018, 1020–21 (1998); *Green Valley Mobile Home Park v. Mulvaney,* 121. N.M. 817, 918 P.2d 1317, 1320–21 (1996); *Ostlund v. Hendricks,* 289 Or. 543, 615 P.2d 327, 330 (1980); *cf. Yee v. City of Escondido,* 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("The term 'mobile home' is somewhat misleading. Mobile homes are largely immobile as a practical matter, because the cost of moving one is often a significant fraction of the value of the mobile home itself.").

¶ 21 In the case at hand, Coleman failed to satisfy the requirements of the MHPRA. There was no mutual agreement to terminate the lease. Moreover, Coleman failed to establish that he was entitled to terminate the lease for any of the causes listed in section 57–16–5, and his notices to the Thomases stated no such cause.[5] The lease term upon which Coleman relies, permitting either party to terminate the lease with simple notice, is ineffective because Michael Thomas could not waive his protections under the MHPRA.

¶ 22 In determining that the Thomases wrongfully occupied the premises, the trial court looked to the unlawful detainer statute, Utah Code Ann. § 78–36–3 (1996). Because the lease in this case was not terminated, however, the Thomases are not in unlawful detainer. Moreover, Utah's unlawful detainer statute is inapposite in the instant case because the statute clearly states that unlawful detainer by a resident of a

---

**5.** On September 18, 1997, over one year after serving notice that he was terminating the lease, Coleman served upon the Thomases a "notice of intent to commence action" stating that he was entitled to evict the Thomases due to the "expiration" and "nonrenewal" of the lease. Coleman also stated in the notice that the Thomases (1) failed to maintain their lawn and surrounding premises as required by the lease, (2) failed to comply with the park "peace and quiet rules," and (3) "substantially endangered the security and health of the other residents or threatened the property in the park." Coleman presented evidence at trial attempting to substantiate these causes for evicting the Thomases.

Each of the three purported causes, if substantiated, would have entitled Coleman to terminate the Thomases' lease under section 57–16–5 of the MHPRA. The first two involve violations of park rules, for which a lease may be terminated under Utah Code Ann. § 57–16–5(1)(a) (Supp.1999). The third comes directly from Utah Code Ann. § 57–16–5(1)(c). However, it would have also been necessary for Coleman to provide proper notice of these causes in his original notices to the Thomases, as dictated by Utah Code Ann. § 57–16–6. In addition, if Coleman wished to terminate the lease on the basis of the first two causes, he had a duty under sections 57–16–5 and 57–16–6 to provide the Thomases with a period in which to cure the purported violations of park rules. Coleman's failure to provide proper notice of the three causes precluded him from terminating the lease on any of those bases.

mobile home park shall be determined by the MHPRA, *see id.* § 78–36–3(2), except in limited circumstances not pertinent to the case before us.

### CONCLUSION

¶ 23 In sum, the trial court erred when it concluded that the MHPRA did not apply in this case. The plain language of the MHPRA forbids a park owner to terminate a lease without cause. Coleman's attempt to terminate the lease in this case without cause violated the MHPRA. We therefore reverse and remand for proceedings consistent with this opinion.

¶ 24 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.