2000 UT 99

Jaime and Marie GOROSTIETA, as guardians ad litem for Dalinda Gorostieta, Plaintiffs and Appellants,

v.

Rhonda PARKINSON, Defendant and Appellee.

No. 981741.

Supreme Court of Utah.

Dec. 15, 2000.

# 1112

Michael W. Crippen, Russell A. Cline, Salt Lake City, for plaintiffs.

Jan P. Malmberg, John Haslam Bailey, Logan, for defendant.

RUSSON, Associate Chief Justice:

¶1 Jaime and Marie Gorostieta (the "Gorostietas"), as guardians ad litem for their daughter Dalinda Gorostieta, appeal from a judgment rendered in regard to their daughter. The Gorostietas argue that the trial court erred in not allowing Marie Gorostieta to testify regarding the amounts contained in medical bills incurred as a result of Dalinda's injury, and also in its ruling regarding jury instructions. We affirm.

## BACKGROUND

¶2 "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Loose*, 2000 UT 11, ¶2, 994 P.2d 1237. On March 21, 1994, at approximately 4:00 p.m., Rhonda Parkinson was returning home from work and, as was her usual custom, was driving down 300 South in Wellsville, Utah. Dalinda Gorostieta and several other children had just disembarked from their school bus and were walking together in the middle of 300 South as they usually did. Parkinson approached the children slowly from behind and, without sounding her horn, drove through them. As the children parted to allow the car through, Dalinda appeared to become confused as to which way to turn, and Parkinson's car ran over her foot. Dalinda was twelve years old at the time.

¶3 On August 10, 1995, the Gorostietas filed a complaint for negligence and served Parkinson with a first request for discovery, including requests for admissions and production of documents. Parkinson answered the Gorostietas' complaint on September 7. On September 15, the Gorostietas served a second set of discovery, including interrogatories and requests for admissions and production of documents. Parkinson served the Gorostietas with discovery including interrogatories and a request for production of documents on September 20 and then answered the Gorostietas' first request for production of documents on September 21 and their first request for admissions on October 14. On April 23, 1997, Parkinson answered the Gorostietas' second set of discovery. The Gorostietas did not respond to Parkinson's discovery requests.

¶4 A pretrial conference was held on May 13, 1997. By that time, the Gorostietas still

had never responded to Parkinson's interrogatories and request for production of documents; Parkinson had responded to all of the Gorostietas' discovery requests. Thereafter, the court issued an order on May 30 that set the jury trial for December 3, 1997, and required the parties to exchange witness lists and exhibit lists no later than October 1, 1997.

¶ 5 Parkinson submitted her exhibit list and witness list on October 1, 1997, but the Gorostietas did not. In fact, by that time, the Gorostietas still had not responded to Parkinson's discovery request of September 20, 1995. Accordingly, on October 31, 1997, Parkinson moved for summary judgment, seeking dismissal pursuant to rules 37[1] and 56[2] of the Utah Rules of Civil Procedure for the Gorostietas' "flagrant violations of court orders and discovery rules."

¶ 6 At the summary judgment hearing on November 26, 1997, the Gorostietas claimed that their response to Parkinson's September 1995 discovery request had been completed in May 1997 but had not been sent until November 4 due to a clerical oversight. In addition, the Gorostietas claimed that a witness list had not been provided by October 1 because the Gorostietas planned to adopt Parkinson's witness list. On November 4, only after Parkinson had filed for summary judgment, the Gorostietas served Parkinson with notice of adopting Parkinson's list. However, the Gorostietas had still not produced an exhibit list. The court denied Parkinson's motion for summary judgment but sanctioned the Gorostietas by ordering that they were "precluded from introducing any exhibits at the time of trial."

¶ 7 The jury trial began December 3, 1997. Before arguments on the second day of trial, counsel for both parties met with the judge to discuss jury instructions. During this discussion, it became apparent to Parkinson's counsel[3] that the Gorostietas' attorney proposed to offer into evidence the medical expenses incurred to that date through testimo-

ny from Marie Gorostieta, Dalinda's mother. Parkinson's counsel objected, arguing that medical expenses fall under the business record exception to the hearsay rule and can be admitted only by an employee of the business. She argued that a layperson reading a bill to a jury did not provide the best evidence and lacked the personal knowledge to testify as to the necessity of the treatment and the reasonableness of the charges. While the treating doctor, Dr. Larsen, had previously given testimony regarding Dalinda's medical treatment, the Gorostietas' attorney had failed to elicit testimony at that time as to whether the medical bills reflected necessary treatment and whether the charges for that treatment were reasonable. After discussing the issue at length, counsel for the Gorostietas specifically asked if the court was ruling that either Dr. Larsen or someone from his office had to testify as to the reasonableness of the charges. The court responded that it was not ruling that anyone in particular had to be there but that the charges had to be shown to be reasonably incurred.

¶ 8 Parkinson's attorney then argued that because the issue was being raised in the middle of the trial, the Gorostietas were confined to the witness list submitted, that which they had adopted from Parkinson. Furthermore, Parkinson argued, that list did not include anyone but Dr. Larsen who could testify to the reasonableness of the medical expenses. The trial court agreed, and therefore, the Gorostietas' counsel was to be allowed to recall Dr. Larsen. It was quickly learned, however, that Dr. Larsen was in surgery and could not return until 4:30 that afternoon.

¶ 9 About mid-day, the Gorostietas' case was nearly completed. The court recessed and excused the jury to allow counsel to present motions out of the presence of the jury. At this time, Parkinson's counsel argued that the Gorostietas had to move for a continuance in order to await Dr. Larsen's

1. Rule 37 of the Utah Rules of Civil Procedure outlines sanctions and procedures in the event a party fails to cooperate in discovery.

2. Rule 56 of the Utah Rules of Civil Procedure outlines the requirements and procedures for a motion for summary judgment.

3. We have been provided with only a partial transcript in the record, and therefore, it is not clear how the matter became apparent to Parkinson's counsel.

testimony and that the court should not allow such a continuance. The judge responded that at that point, no one had moved for a continuance, and then, the judge asked the Gorostietas' attorney if he was prepared to rest. Counsel for the Gorostietas did not move for a continuance but instead responded that aside from testimony from Dr. Larsen, he was prepared to rest. Therefore, the court allowed the Gorostietas to rest with the reservation that Dr. Larsen could be called out of order but only if the trial was not completed before 4:30 p.m. when the doctor would be available. To this, the Gorostietas' attorney quipped, "Obviously, if [Parkinson] ends her case right now, we've rested and it's over."

¶ 10 The judge declared a five-minute recess after which the Gorostietas' attorney requested that he be allowed to put Dalinda's mother on the stand to testify to the amounts of the bills she had received for Dalinda's care. Counsel proposed that when Dr. Larsen was available, counsel would review this information with the doctor and ask him to testify as to the reasonableness of the charges. The judge asked Parkinson's attorney for her response to this motion. Parkinson's attorney, having consulted with her client during the recess, rested at this point without presenting any evidence. The minutes of the jury trial show that Parkinson rested at 2:37 p.m. Consequently, the court denied the Gorostietas' motion, and thus, the Gorostietas failed to introduce evidence pertaining to incurred medical expenses.

¶ 11 After presentation of jury instructions and closing arguments, the jury retired for deliberations. A verdict was returned that awarded the following:

Special Damages

| | | |
|---|---|---|
| A. | Past Special Damages: (Actual costs incurred) | $ 0 |
| B. | Future Special Damages: (Actual future costs to be incurred) | $ 3300.00 |
| | General Damages: (Pain, suffering, and permanent disability) | $15,000.00 |
| | Total | $18,300.00 [4] |

4. The jury returned a verdict for $18,300. However, the judgment was entered for $18,200. There is no explanation in the record for the discrepancy.

The jury attributed 35% of the fault to Dalinda and 65% to Parkinson. The Gorostietas' judgment was thereby reduced by 35% to reflect Dalinda's portion of fault.

¶ 12 The Gorostietas appeal this judgment and argue that (1) the trial court erred in refusing to allow Dalinda's mother to testify as to the amounts of the medical bills she incurred for Dalinda's care; and (2) the trial court further erred in giving jury instructions 16, 21, 22, 24, 25, 27, and 28 [5] and in omitting a sentence from a requested jury instruction that had been taken from a statute.

¶ 13 Parkinson contends that the notice of appeal was not timely filed because the Gorostietas did not timely submit filing fees and this court therefore lacks jurisdiction. In addition, Parkinson argues that the Gorostietas did not timely file a docketing statement and thus the appeal should be dismissed. Furthermore, Parkinson argues that if we assert jurisdiction and do not dismiss, (1) the trial court did not err in refusing to allow Dalinda's mother to testify as to the amounts of the medical bills incurred because such testimony would have been hearsay offered to prove the truth of the amounts contained in the bills, and (2) the jury instructions given covered all aspects of the applicable law and there was no prejudicial error in excluding the language complained of.

## STANDARD OF REVIEW

¶ 14 "The admissibility of an item of evidence is a legal question." *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 12, 977 P.2d 474. However, the trial court has a great deal of discretion in determining whether to admit or exclude evidence, and its ruling will not be overturned unless there is an abuse of discretion. *See id.* at ¶¶ 12, 14; *State v. Pena*, 869 P.2d 932, 938 (Utah 1994); *State v. Sutton*, 707 P.2d 681, 684 (Utah 1985).

5. This issue is presented for review but is not briefed anywhere in appellants' brief or reply brief.

¶ 15 In addition, "[a] trial court's ruling concerning a jury instruction is reviewed for correctness." *Butler v. Naylor*, 1999 UT 85, ¶ 10, 987 P.2d 41. The ruling does not constitute reversible error, however, unless the error is harmful and prejudicial. *See id.* at ¶ 10.

## ANALYSIS

¶ 16 As an appellate court, our "power of review is strictly limited to the record presented on appeal." *Van Cott v. Wall*, 53 Utah 282, 296, 178 P. 42, 48 (1918) (on application for rehearing). "Parties claiming error below and seeking appellate review have the duty and responsibility to support their allegations with an adequate record." *State v. Wetzel*, 868 P.2d 64, 67 (Utah 1993); *see also* Utah R.App.P. 11(e)(1)–(2). The record in this case contains only partial transcripts. As such, where we are without an adequate record, we must assume the regularity of the proceedings below. *See Wetzel*, 868 P.2d at 67.

### I. NOTICE OF APPEAL

¶ 17 Parkinson contends that the notice of appeal was not timely filed because the Gorostietas did not timely pay the filing fee. Therefore, she contends that we are without jurisdiction to hear this matter. Parkinson relies on rule 3(f) of the Utah Rules of Appellate Procedure for her position. The Gorostietas counter that rule 3(a) is dispositive and, further, that because the rules are silent as to how the payment of fees is to be made, the clerk was permitted to use discretion in allowing the fees to be paid by mail.

¶ 18 The final judgment was signed on August 26, 1998. Because August has thirty-one days, the notice of appeal was due on September 25. *See* Utah R.App.P. 4(a) (requiring notice of appeal to be filed within thirty days). The record reflects that on September 25, a secretary from the office of the Gorostietas' attorney called the clerk at the First District Court in Logan regarding the filing of the notice of appeal. The clerk told the secretary that she would accept the notice of appeal by fax so that the secretary did not have to travel from Salt Lake City to Logan, as long as the original notice and filing fees were mailed forthwith. The record reflects that faxed copies of the notice of appeal and filing fees were sent and received on September 25, 1998. The original notice of appeal was then received and filed on September 28, and the fees were received on October 2.

¶ 19 Rule 3(f) of the Utah Rules of Appellate Procedure provides:

> At the time of filing any notice of separate, joint, or cross appeal in a civil case, the party taking the appeal shall pay to the clerk of the trial court the filing fee established by law. *The clerk of the trial court shall not accept a notice of appeal unless the filing fee is paid.*

(Emphasis added.) However, rule 3(a) provides:

> An appeal may be taken from a district or juvenile court to the appellate court with jurisdiction over the appeal from all final orders and judgments, except as otherwise provided by law, by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4. *Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal,* but is ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal or other sanctions short of dismissal, as well as the award of attorney fees.

(Emphasis added.) It is clear from the plain language of rule 3(a) that the timely filing of the notice of appeal is the only jurisdictional step. The plain language of rule 3(a) makes it clear that "the timely payment of fees on an appeal from the district court to this Court is no longer jurisdictional." *State v. Johnson*, 700 P.2d 1125, 1129 n. 1 (Utah 1985).

¶ 20 The clerk accepted the faxed copy of the notice of appeal as a timely filed notice of appeal. Parkinson argues that rule 3(f) indicates that a notice of appeal is not filed until the filing fees are paid. The plain language of rule 3(f) does not, however, state that the notice of appeal is not considered filed until the fees are paid. Rather, the language

directs the clerk not to accept a notice of appeal unless the fees are paid. We do not address whether the filing fees were timely paid upon their being mailed with the permission of the clerk, as the Gorostietas argue, because this court has already addressed the effect that payment of fees has on our appellate jurisdiction. The clerk accepted the faxed copy of the notice of appeal as being timely filed, and therefore, we have jurisdiction to hear this matter.

## II. DOCKETING STATEMENT

 ¶ 21 Parkinson also argues that the appeal should be dismissed because the docketing statement was not timely filed. Rule 9 of the Utah Rules of Appellate Procedure deals with the docketing statement, and the subsections of rule 9 that are pertinent to this issue are 9(a), 9(b), and 9(g).

¶ 22 Rule 9(a) provides that a docketing statement shall be filed "[w]ithin 21 days after a notice of appeal ... is filed." Utah R.App.P. 9(a). Rule 9(b) states the purpose of the docketing statement:

> It is used by the appellate court in assigning cases to the Supreme Court or to the Court of Appeals when both have jurisdiction, in making certifications to the Supreme Court, in classifying cases for determining the priority to be accorded them, in making summary dispositions when appropriate, and in making calendar assignments.

Utah R.App.P. 9(b); *see also Nelson ex rel. Stuckman v. Salt Lake City,* 919 P.2d 568, 572 (Utah 1996). Rule 9(g) provides the consequences for failure to comply:

> Docketing statements which fail to comply with this rule will not be accepted. Failure to comply *may* result in dismissal of the appeal or the petition.

Utah R.App.P. 9(g) (emphasis added).

¶ 23 As stated above, the trial court clerk accepted a faxed copy of the notice of appeal on September 25, 1998. Therefore, pursuant to rule 9(b), the Gorostietas had twenty-one days, until October 16, to file their docketing statement. However, the Gorostietas did not file until October 29, making the docketing statement thirteen days late.

 ¶ 24 While timely filing is necessary, the record does not reflect, nor does Parkinson allege, any problems that arose within the appellate court as a result of the untimely filing of the docketing statement. Therefore, it appears that the purpose of the docketing statement, as set forth in rule 9(b), was still served. In addition, Parkinson does not allege any prejudice suffered as a result of the Gorostietas' untimely filing of the docketing statement. Finally, the plain language of rule 9(g) indicates that dismissal for failure to timely file the docketing statement is discretionary.

¶ 25 Even though compliance with the Utah Rules of Appellate Procedure is critical, in view of the foregoing, we do not dismiss this appeal.

## III. TESTIMONY AS TO MEDICAL EXPENSES

¶ 26 The Gorostietas allege that the trial court erred in not allowing Marie Gorostieta, Dalinda's mother, to testify regarding the amounts contained in the medical bills incurred as a result of Dalinda's injury. Parkinson counters that Marie Gorostieta's testimony as to the amounts charged for medical services would have been hearsay and thus inadmissible when offered for the truth of the amounts contained therein.

### A. Background

 ¶ 27 In order to thoroughly understand this issue, the background of the case must be explored. The Gorostietas filed their complaint in August 1995 and within one month served Parkinson with two sets of discovery. Parkinson timely responded to all of the Gorostietas' discovery requests. However, the Gorostietas had not responded to Parkinson's discovery requests after more than two years.

¶ 28 In addition, the trial judge issued a pretrial order on May 30, 1997, for both parties to produce and exchange witness lists and exhibit lists no later than October 1, 1997. The Gorostietas failed to comply with this order.

¶ 29 Therefore, Parkinson moved for summary judgment, seeking dismissal. It was

only after Parkinson's motion for summary judgment that the Gorostietas finally responded to her discovery requests. In addition, only after Parkinson moved for summary judgment did the Gorostietas serve her with notice that they would adopt her witness list. The Gorostietas failed, however, to ever produce an exhibit list.

¶ 30 The judge refused to grant Parkinson's motion for summary judgment but ordered that sanctions be imposed prohibiting the Gorostietas from introducing any exhibits at trial.

¶ 31 Trial courts are given broad discretion regarding the imposition of discovery sanctions because it is they that must deal first hand with the parties and the discovery process. *See Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997). We will interfere only if an abuse of discretion is clearly shown. *See id.* Persistent dilatory tactics that frustrate the judicial process are adequate to trigger rule 37 sanctions, and the choice of the appropriate sanctions is within the trial judge's discretion. *See id.*

¶ 32 Rule 16 of the Utah Rules of Civil Procedure [6] provides that if a party or the party's attorney fails to comply with a pretrial order, the court may "make such orders with regard thereto as are just, and among others, any of the orders provided in Rule 37(b)(2)(B), (C), (D)." Utah R.Civ.P. 16(d). Rule 37 of the Utah Rules of Civil Procedure provides:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . .

(B) an order ... prohibiting [the disobedient party] from introducing designated matters in evidence....

*Id.* 37(b)(2).[7]

¶ 33 Given the repeated dilatory conduct of the Gorostietas' attorney and the failure to comply with the pretrial order, there is ample evidence that the trial court did not abuse its discretion by ruling that the Gorostietas could not introduce any exhibits at the time of trial.

¶ 34 Nevertheless, while it is true that the Gorostietas had been precluded from introducing any exhibits, the medical expenses could have been proffered into evidence for appeal purposes but they never were. Therefore, the bills are not before us as a part of the record for our review and neither is a transcript of the doctor's testimony. As previously stated, the burden is upon the appellant to provide an adequate record for review, and without an adequate record, we must assume the regularity of the proceedings below. *See State v. Wetzel*, 868 P.2d 64, 67 (Utah 1993).

### B. Medical Expenses

¶ 35 It is a general rule that the foundation to establish the reliability of medical expenses is to provide evidence of reasonableness and necessity. *See Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 981 (Utah 1993) (noting that requirement for compensation in tort action is that expenses be reasonable and necessary) (citing Charles J. McCormick, *Handbook on the Law of Damages* § 90, at 323–27 (1935); 1 Jacob A. Stein, *Stein on Personal Injury Damages* §§ 5:1–5:3 (2d ed.1991); 22 Am.Jur.2d *Damages* §§ 197–206 (1988)); *Simmons v. Wilkin*, 80 Utah 362, 366, 15 P.2d 321, 323 (1932) (holding that special damages must be shown to be reasonable and necessarily resulting from accident).[8] Therefore, once injuries

---

6. Rule 16 was amended effective November 1, 1999, to correspond with the 1993 amendment to rule 16 of the Federal Rules of Civil Procedure. However, the new procedures are applicable only to cases filed on or after November 1, 1999. *See* Utah R.Civ.P. 16 advisory committee note. Therefore, the applicable rule for the case before us is taken from the 1997 Utah Rules of Civil Procedure.

7. The 1999 amendment to rule 37 is also applicable only to cases filed after November 1, 1999. *See* Utah R.Civ.P. 37 advisory committee note. Therefore, rule 37 of the 1997 Utah Rules of Civil Procedure is the applicable rule to be applied in the case before us.

8. *See also Larsen v. Decker*, 196 Ariz. 239, 995 P.2d 281, 286 (Ct.App.2000) (holding that trial court did not abuse its discretion when it found that no foundation had established bills were

have been shown, evidence is required to show that the medical expenses accurately reflect the necessary treatment that resulted from the injuries and that the charges are reasonable.

¶ 36 The Gorostietas claim it was error for the trial court not to allow Marie Gorostieta to read or testify as to the contents of the medical bills she received as evidence of their reasonableness. Parkinson argues that any testimony offered by Marie Gorostieta regarding the medical bills would have been hearsay. We find it unnecessary to address whether this evidence would have been hearsay because this court has already ruled that under the best evidence rule,[9] a witness may not testify as to material con-

tained in exhibits that have been previously denied admission.[10] *See Intermountain Farmers Ass'n v. Fitzgerald,* 574 P.2d 1162, 1165 (Utah 1978); *see also State v. Ross,* 573 P.2d 1288, 1289–90 (Utah 1978) (holding that trial court erred in allowing police officer to testify to contents of telephone records that were not introduced into evidence).[11] To allow a witness to so testify would present directly to the jury unsubstantiated information contained in the excluded exhibits. *See Intermountain Farmers,* 574 P.2d at 1165–66; *Ross,* 573 P.2d at 1290.

¶ 37 The best evidence rule provides that "[t]o prove the content of a writing, ... the original writing ... is required, except as otherwise provided in these rules

caused by and were reasonable and necessary results of accident); *McAllister v. George,* 73 Cal. App.3d 258, 140 Cal.Rptr. 702, 706 (1977) (ruling that to recover damages for tort, plaintiff must prove dental charges were reasonable and required as result of tort); *Lawson v. Safeway, Inc.,* 878 P.2d 127, 131 (Colo.Ct.App.1994) (noting that correct measure of compensable damages for medical expenses is necessary and reasonable value of services rendered); *Garrett v. Morris Kirschman & Co.,* 336 So.2d 566, 571 (Fla.1976) (holding that jury should decide whether plaintiff's testimony proved reasonable and necessary medical expenses); *Zack's Props., Inc. v. Gafford,* 241 Ga.App. 43, 526 S.E.2d 80, 82 (1999) (holding that statute does not alleviate plaintiff's burden to provide additional evidence that medical bills were reasonable and necessary); *Smith v. Syd's, Inc.,* 598 N.E.2d 1065, 1066 (Ind.1992) (holding that medical expenses must be proven to be both reasonable and necessary); *Shpigel v. White,* 357 Md. 117, 741 A.2d 1205, 1210 (1999) (holding that statute provides medical bill is admissible to prove amount, fairness, and reasonableness of charges); *Phelps v. MacIntyre,* 397 Mass. 459, 491 N.E.2d 1067, 1069 (1986) (holding that statute provides medical bills are admissible as evidence of necessary, fair, and reasonable charges); *Schaeffer v. Craden,* 800 S.W.2d 165, 166 (Mo.Ct.App.1990) (holding that recovery for medical expenses incurred as result of accident depends on proof of necessity and reasonableness); *Chamberlain v. Thames,* 131 N.C.App. 705, 509 S.E.2d 443, 450 (1998) (holding that statute establishes rebuttable presumption of reasonableness of charges but necessity must still be proven); *Coleman v. Erie Thriftway Supermarket, Inc.,* No. 3655, 1995 WL 1315955, 1995 Phila. Cty. Rptr. LEXIS 11, **17 (affirming admission of bills where physician testified as to reasonableness and necessity); *Martinez v. Kurdziel,* 612 A.2d 669, 676 (R.I.1992) (holding that statute does not remove plaintiff's burden of proving causation and reasonable-

ness); *Castillo v. Am. Garment Finishers Corp.,* 965 S.W.2d 646, 654 (Tex.Ct.App.1998) (holding that statute allows admissibility of evidence by affidavit to prove reasonableness and necessity of medical expenses); *Forcier v. Grand Union Stores, Inc.,* 128 Vt. 389, 264 A.2d 796, 801 (1970) (holding that court properly admitted bills physician testified were reasonable and reasonably necessarily incurred); *McMunn v. Tatum,* 237 Va. 558, 379 S.E.2d 908, 914 (1989) (holding that medical bills offered through plaintiff's testimony alone may require more if rebuttable presumption of reasonableness and necessity is challenged); *Kennedy v. Monroe,* 15 Wash.App. 39, 547 P.2d 899, 906 (1976) (upholding physician's competence to testify as to reasonableness and necessity of medical services); *Milwaukee County v. Long,* 189 Wis.2d 489, 527 N.W.2d 398 (App. 1994) (per curiam) (holding that statute does not eliminate plaintiff's burden to prove reasonableness and necessity of past medical expenses); *cf. Arnold Mach. Co. v. Intrusion Prepakt, Inc.,* 11 Utah 2d 246, 248, 357 P.2d 496, 497 (1960) (holding that jury has responsibility to determine whether repair bills represent necessary and reasonable expenses).

9. The best evidence rule is also known as the original document rule. *See* Ronald N. Boyce, Edward L. Kimball, *Utah Evidence Law* 10–1 (1996).

10. Although she does not argue the best evidence rule in response to the Gorostietas' appeal, Parkinson did argue in the trial court that to allow Marie Gorostieta to read the bills into evidence would be a violation of the best evidence rule.

11. These cases cite rule 70 of the Utah Rules of Evidence, which rule essentially encompassed the now current rules 1002, 1003, and 1004. *Compare* Utah R.Evid. 1002, 1003, 1004 (2000) *with* Utah R.Evid. 70 (1977).

or by other rules adopted by the Supreme Court of this State or by Statute." Utah R.Evid. 1002. The purpose of this rule is primarily to prevent mistake or fraud. *See* 29A Am.Jur.2d *Evidence* § 1049, at 511 (1994); 32A C.J.S. *Evidence* § 1061 (1996); 6 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 1002.03[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997) [hereinafter *Weinstein's* ]; 4 *Wigmore on Evidence* § 1179, at 417 (James H. Chadbourn ed., rev.1972). Therefore, when the content of a document is material to the matter to be proved, the original writing must be produced unless it is unavailable due to an exception *and* its absence is not attributable to the fault of the party seeking to use it as proof of the contents therein. *See* Am.Jur.2d *supra,* § 1049, at 510; C.J.S. *supra,* §§ 1057, 1059.

 ¶ 38 The rules of evidence provide for exceptions in cases where the originals are lost or destroyed, the original is not obtainable, the original is in the possession of the opponent, or the writing concerns a collateral matter. *See* Utah R.Evid. 1004. Nevertheless, even if an original document meets one of the exceptions provided, secondary evidence will not be allowed if the proponent of the evidence was responsible for its absence. *See Weinstein's* § 1004.11[2][a]. This is due to the extensive risk that the proponent might offer false or misleading secondary evidence. *See id.*

¶ 39 In the instant case, Dr. Larsen, who was the treating physician, was called by the Gorostietas to testify. Because we have been provided with only partial transcripts, there is no record of his testimony. However, he was apparently never asked about the medical charges.

¶ 40 Also due to the incompleteness of the record, it is unclear as to what testimony Marie Gorostieta would have provided. However, it appears from the partial transcripts that she was to be asked to provide testimony as to the reasonableness of the charges by reading the contents of the medi-

cal bills that had not been admitted into evidence.[12]

¶ 41 The Utah Rules of Evidence and Utah case law require that the medical bills themselves be used to prove their contents. The exceptions to the best evidence rule are not applicable in this case. Furthermore, where a party has been properly sanctioned by the trial court, and thereby precluded from admitting any exhibits, we cannot allow the sanctioned party to then circumvent the law by reading into evidence the contents of the exhibits that have been precluded. This would reward the sanctioned party by putting it into a stronger position, whereby it could be allowed to mislead the trier of fact as to the contents of the inadmissible writing. Therefore, we hold that the trial court did not err in refusing to allow Marie Gorostieta to testify as to the amounts contained in the medical bills.

## IV. JURY INSTRUCTIONS

¶ 42 The Gorostietas allege that the trial court erred in removing a sentence from a requested jury instruction that had been taken verbatim from section 41–6–80 of the Utah Code. In addition, they argue that the court erred in giving jury instructions 16, 21, 22, 24, 25, 27, and 28. Parkinson counters that the jury instructions given by the court covered all aspects of the applicable law in this case and there was no prejudicial error in removing the sentence complained of.

### A. Error as to Jury Instructions Given

 ¶ 43 We will first dispose of the Gorostietas' argument regarding jury instructions 16, 21, 22, 24, 25, 27, and 28. "It is well established that a reviewing court will not address arguments that are not adequately briefed." *State v. Thomas,* 961 P.2d 299, 304 (Utah 1998); *see also State v. Thomas,* 1999 UT 2, ¶ 11, 974 P.2d 269; *Walker v. U.S. Gen., Inc.,* 916 P.2d 903, 908 (Utah 1996). Rule 24 of the Utah Rules of Appellate Procedure provides that the "[b]rief of the appellant *shall* contain ... [an] argument [that] *shall* contain the contentions and rea-

---

12. We do not address the case of whether Marie Gorostieta could have testified to her first hand knowledge of what she actually paid because the

record does not reflect that such was the case, nor do appellants argue this.

sons of the appellant with respect to the issues presented, ... with citations to the authorities, statutes, and parts of the record relied on." Utah R.App.P. 24(a)(9) (emphasis added). An appellate court " 'is not simply a depository in which the appealing party may dump the burden of argument and research.' " *Thomas*, 1999 UT 2 at ¶ 11, 974 P.2d 269 (quoting *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988)).

¶ 44 The Gorostietas complain of jury instructions 16, 21, 22, 24, 25, 27, and 28 in their statement of the issues but then completely fail to support this claim anywhere in their argument or their reply brief. We therefore do not address it.

### B. Excluding Statutory Language from Jury Instruction

¶ 45 The Gorostietas requested that section 41–6–80 of the Utah Code be used verbatim as a jury instruction. This statute in its entirety reads:

> The operator of a vehicle shall exercise care to avoid colliding with any pedestrian and shall give an audible signal when necessary and exercise appropriate precaution upon observing any child or any obviously confused, incapacitated, or intoxicated person. This section supersedes any conflicting provision of this chapter or of a local ordinance.

Utah Code Ann. § 41–6–80 (1998).[13] The court delivered this statute as a jury instruction, omitting the last sentence, "This section supersedes any conflicting provision of this chapter or of a local ordinance." The Gorostietas argue that by omitting the last sentence, the court misled the jury as to the legal duties of Parkinson and Dalinda Gorostieta.

¶ 46 When reviewing jury instructions, we must consider the challenged instruction in context. *See Cheves v. Williams*, 1999 UT 86, ¶ 37, 993 P.2d 191; *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 16, 977 P.2d 474. Generally,

the rewording of a statute as a jury instruction is not error as long as it does not change the essential meaning of the statute. *See* 75A Am.Jur.2d *Trial* § 1132, at 648; *accord Holmes v. Heidebrecht*, 10 Utah 2d 74, 75–76, 348 P.2d 565, 566 (1960). Therefore, we must determine the meaning of the omitted sentence to ascertain whether its omission from the jury instruction changed the meaning from that of the statute.

¶ 47 When interpreting a statute, we must first look to the statute's plain language for the legislative intent. *See Coleman v. Thomas*, 2000 UT 53, ¶ 9, 4 P.3d 783. We look no further if the plain language of the statute is unambiguous on its face. *See id.*

¶ 48 Section 41–6–80 explains the duty a vehicle operator has with respect to pedestrians and in particular pedestrians who fall into the category of "any child or any obviously confused, incapacitated, or intoxicated person." Utah Code Ann. § 41–6–80. The last sentence states, "This section supersedes any conflicting provision of this chapter or of a local ordinance." *Id.* The Gorostietas argue that this last sentence indicates that the vehicle operator's duty supersedes or sets aside[14] the duty of a child pedestrian and the jury was therefore misled in finding that Dalinda was 35% at fault for her injuries.

¶ 49 The Gorostietas misinterpret the plain meaning of the last sentence of the statute. The statute sets forth the duty a vehicle operator has to pedestrians. The last sentence of section 41–6–80 states that the section sets aside any conflicting provision of the traffic rules and regulations found in chapter 6 of the annotated Utah Code or of a local ordinance. The plain language of the section clearly states that if either a local ordinance or a state statute under chapter 6 creates a duty for a vehicle operator that is any more or less than that stated in this section (which, inter alia, is to exercise the appropriate pre-

---

13. This accurately states the version of the statute at the time of the trial as requested by the Gorostietas.

14. Supersede is defined as "[o]bliterate, set aside, annul, replace, make void, inefficacious or useless, repeal[; t]o set aside, render unnecessary, suspend, or stay." *Black's Law Dictionary* 1437 (6th ed. 9th prtg.1995).

caution upon observing any child), that ordinance or statute is set aside. *See* Utah Code Ann. § 41–6–80.

¶ 50 The jury was given several instructions on the various duties of a driver and also on those of a pedestrian. Taken in context, with the proper meaning given to section 41–6–80, the omission of the last sentence from the jury instruction did not change the essential meaning of the statute. Therefore, there was no error.

## CONCLUSION

¶ 51 We affirm the trial court's refusal to allow Dalinda's mother to testify as to the amounts of the medical bills she incurred for Dalinda's care. In addition, we affirm the trial court's ruling regarding jury instructions.

¶ 52 Justice DURRANT and Justice WILKINS concur in Associate Chief Justice RUSSON'S opinion.

DURHAM, Justice, dissenting:

¶ 53 I dissent from that portion of the majority opinion construing the best evidence rule, and from its conclusion that Ms. Gorostieta was to be asked to read the contents of the medical bills into evidence.

¶ 54 First, the trial transcript shows that plaintiffs' counsel told the court that "as far as the bills would go is that I would hand, you know, I would have her refresh her memory from the bills as to the amounts." There was no intent or request to permit Marie Gorostieta to read their contents.

¶ 55 Second, the best evidence rule applies only when a party is seeking to prove "the content of a writing." Here, plaintiffs were seeking to prove the amount *actually expended* for treatment of serious injuries, not the content of the bills received from providers. The majority correctly cites 29A Am. Jur.2d *Evidence* § 1049 (1994) for the proposition that "[t]he underlying purpose of the best evidence rule is the prevention of fraud or mistake in proof of the contents of a writing." However, it does not cite the next principle summarized in § 1049: "Accordingly, the rule does not preclude a witness from testifying to facts recorded in a writing from his or her personal knowledge." The annotations to that section include numerous state and federal cases, one of which amply illustrates the difference between proving what a writing says and proof of an independent fact of which a witness has personal knowledge. In *R & R Associates, Inc. v. Visual Scene, Inc.*, 726 F.2d 36 (1st Cir.1984), the court reviewed the testimony of a corporate executive about the cost to his company of defective merchandise obtained from the defendant:

> [W]hen President Smith testified that it cost plaintiff $31,850.19 to procure the allegedly defective merchandise, he was in no way attempting 'to prove the contents of a writing.' Rather, he was attempting by his own direct testimony to prove a particular fact: what it cost R & R to procure the merchandise. To be sure, plaintiff had in its possession written documentation that presumably supported President Smith's testimony. But, as the advisory committee note makes clear, Rule 1002 [of the Federal Rules of Evidence] applies not when a piece of evidence sought to be introduced has been somewhere recorded in writing but when it is that written record itself that the party seeks to prove.

*Id.* at 38 (citations omitted).

¶ 56 The court's opinion is even more directly on point because, as it notes in a footnote, the plaintiff in that case later "unsuccessfully sought to introduce the documentation into evidence." *Id.; see also Gonzalez v. Hoffman*, 157 N.W.2d 475 (Mich.Ct. App.1968) (testimony of expenditures for prescription medication admissible without receipts).

¶ 57 I understand the trial court's frustration with the pre-trial behavior of plaintiffs' counsel in this case, and I agree that the preclusion of exhibits was appropriate. However, the trial court's erroneous application of the best evidence rule, now sustained by the majority, improperly prevented Marie Gorostieta from testifying to facts of which she had personal knowledge: namely, that she had paid more than $11,000 for the treatment her daughter's injuries had required.

Dr. Larsen had already detailed the nature and necessity of the treatment, and Ms. Gorostieta could certainly have been cross-examined on the accuracy of her recollection. Further, defendant would have been allowed to introduce testimony that the expenses were unreasonable. But if Ms. Gorostieta was billed and paid for the medical expenses, she was entitled to tell the jury so. The error here deprived these plaintiffs of an opportunity to recover for significant damage caused by defendant. I would reverse.

¶ 58 Chief Justice HOWE concurs in Justice DURHAM'S dissenting opinion.