2011 UT App 170

In the Matter of the Application of Buddy W. GREGORY for the Judicial Dissolution of Gregory, Barton & Swapp, PC nka GBS Legal Clinic, PC.

Mobile Echocardiography, Inc., Appellant,

v.

DAT & K, LLC, Appellee.

No. 20090735–CA.

Court of Appeals of Utah.

June 3, 2011.

Petition for Writ of Certiorari Denied Aug. 31, 2011.

James E. Magleby, Salt Lake City, for Appellant.

Roger G. Jones, Nashville, Tennessee; and Joseph M.R. Covey, Salt Lake City, for Appellee.

Before Judges ORME, THORNE, and VOROS.

## OPINION

VOROS, Judge:

¶1 In November 2002, Appellant Mobile Echocardiography, Inc. (MEI) entered into a contract with Keith Barton and the law firm of Gregory, Barton & Swapp (collectively GBS) to provide echocardiograph services to GBS in the offices of GBS (the MEI–GBS Contract). These services included performing initial screenings on potential GBS clients and full study screenings on those who became GBS clients. These clients became plaintiffs in a mass tort case in Texas handled by law firms there (the Texas Firms).

¶2 A dispute arose, and MEI sued GBS on the MEI–GBS Contract. The parties settled. GBS agreed to pay MEI $601,000 in cash and to execute a promissory note in the amount of $2,050,000 (the MEI–GBS Note). The MEI–GBS Note was secured by a security interest in attorney fees to be collected by GBS. This security interest was subordinate to a security interest in the same collateral in favor of Appellee DAT & K's predecessor-in-interest, Advocate Capital, Inc.

¶3 In March 2005, Buddy Gregory filed for judicial dissolution of GBS and requested the appointment of a receiver. MEI filed a proof of claim in the sum of $1,943,420.24 based on the MEI–GBS Note. Two years later, GBS (by this time in receivership), DAT & K, and the Texas Firms entered into a second settlement agreement. This agreement, like the earlier one, acknowledged that the MEI–GBS Note was "by its terms junior and subordinate to the security interest of DAT & K." Pursuant to this settlement, the Texas Firms were to deposit $442,768.03 plus interest (the Disputed Funds) into an escrow fund with the registry of the receivership court. In July 2007, DAT & K moved the court to release the Disputed Funds to DAT & K. MEI objected and moved the court to release the Disputed Funds to MEI. After an evidentiary hearing, the trial court ruled that the Disputed Funds belonged to DAT & K.[1]

¶4 The clients are not parties to this litigation. MEI does not claim to have contracted with them, sued them, or settled with them. Indeed, the trial court ruled that "MEI had no privity with any contract that would give it a direct right of action against the clients." MEI does not contend otherwise.

¶5 MEI claims on appeal that the trial court erred in determining that DAT & K was entitled to the Disputed Funds. The gist of MEI's argument is that the Disputed Funds "came from the 60% of the recovery attributed to the clients' account," not the 40% representing GBS's contingent fee. MEI contends that "a party with a security interest cannot gain more from a debtor than the debtor has to give." MEI relies on the Latin maxim *nemo dat qui non habet* (one cannot give what one does not have) and Utah Code Ann. § 70A–9a–203(2)(b) (2009), which states that "a security interest is enforceable against the debtor and third parties with respect to the collateral only if ... the debtor has rights in the collateral." In applying this rule to the case at bar, MEI argues that DAT & K's admittedly superior security interest in the assets of GBS does not encumber client funds in which GBS has no interest.

¶6 DAT & K does not contend that a party may grant a security interest in property in which it holds no interest. However, in DAT & K's view, the only entity that has any claim to the Disputed Funds—other than the clients themselves—is GBS. DAT & K asserts that only GBS had any contractual relationship with the clients. Furthermore, the receiver for GBS testified that GBS accounted for all revenue related to the case as income to GBS. Accordingly, DAT & K reasons, because its security interest in the assets of GBS is superior to that of MEI, its claim on the Disputed Funds is likewise superior.

¶7 Thus, the question before us is whether MEI's claim to the Disputed Funds is superior to DAT & K's claim. The parties agree that DAT & K's security interest in the assets of GBS is superior to that of MEI. It

---

1. We note that the trial court felt it had been required to decide this matter "without having been presented witnesses with adequate factual foundation to testify competently [to] the nature of the escrowed funds."

follows that, in order to establish a superior claim to the Disputed Funds, MEI must demonstrate a basis for its claim that is independent of any interest of GBS.

■ ¶ 8 MEI stakes its claim to the Disputed Funds largely on two documents. The first is a purported lien agreement between the clients and GBS in which each client grants a lien on that client's recovery in favor of unnamed service providers. MEI asserts that this lien agreement "gave MEI a lien that was *superior* to that now claimed by DAT & K." The difficulty with this argument is that MEI never adduced the lien agreement at trial; rather, it attempted to have Barton and the president of MEI testify to its contents. DAT & K objected to this testimony under the best evidence rule, *see* Utah R. Evid. 1001–1004, and the trial court excluded the testimony.

■ ¶ 9 MEI addresses this ruling in a footnote in the fact section of its opening brief. MEI criticizes the trial court's ruling on the ground that the lien agreement was supported by "the exact same facts" as another document, the Contingency Fee Contract, which was not objected to at trial and was admitted. The cursory discussion in this footnote does not comply with the requirements of rule 24(a)(9) of the Utah Rules of Appellate Procedure. That rule requires "citations to the authorities [and] statutes" relied on. Utah R.App. P. 24(a)(9). MEI has not met this burden. *See Neff v. Neff,* 2011 UT 6, ¶ 65, 247 P.3d 380 (explaining requirements of adequate briefing). MEI does not discuss the best evidence rule and in fact cites no legal authority. Nor does MEI cite to the record as required by rule 24. *See* Utah R.App. P. 24(a)(7), (a)(9). We therefore do not address the question of whether the trial court erred in excluding the lien agreement. And of course we cannot predicate error on the contents of a document neither admitted nor improperly excluded at trial. *See Gorostieta v. Parkinson,* 2000 UT 99, ¶ 16, 17 P.3d 1110 (stating that an appellate court's "power of review is strictly limited to the record presented on appeal" (internal quotation marks omitted)).

■■ ¶ 10 The second document on which MEI relies for its claim to the Disputed Funds is the Contingency Fee Contract. This was an agreement between GBS and its clients, signed at the outset of the attorney-client relationship, in which the clients "agree[d] to pay for all costs, disbursements, and expense owed by [the clients] in connection with this matter, or which have been paid or advanced by [GBS] on [the clients'] behalf and for which [sic] have not previously [been] paid or reimbursed to [GBS]." MEI recognizes that the Contingency Fee Contract is a contract between the clients and GBS, not the clients and MEI. MEI argued at oral argument that it was a third party beneficiary of this agreement. However, MEI does not claim to have presented this third party beneficiary theory to the trial court. It is accordingly unpreserved. *See Utah Chptr. of the Sierra Club v. Air Quality Bd.,* 2009 UT 76, ¶ 26, 226 P.3d 719 (refusing to address unpreserved issues "unless exceptional circumstances are present or the error was plain"). Moreover, MEI did not mention this theory in its briefs on appeal. *See Brigham City v. Stuart,* 2005 UT 13, ¶ 14, 122 P.3d 506 (refusing to consider "issues which have not been properly preserved, framed and briefed"), *rev'd on other grounds,* 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). Indeed, so far as we can determine, MEI raised its third party beneficiary theory for the first time in oral argument. We will not reverse based on an unbriefed argument raised for the first time at oral argument. *See Maak v. IHC Health Servs.,* 2007 UT App 244, ¶¶ 30–31, 166 P.3d 631 (refusing to reach arguments that were not properly briefed in the opening brief).

■ ¶ 11 In addition to the foregoing documents, the record presents an array of agreements involving MEI: the MEI–GBS Contract, which created a fee schedule outlining the amount that GBS would pay MEI for each screening and study; the MEI–GBS Settlement Agreement, which authorized the Texas firms to pay MEI $601,000; and the MEI–GBS Security Agreement, which gave MEI a security interest in GBS assets that was junior to DAT & K's security interest. However, each of these documents addresses the rights of MEI vis-a-vis GBS; none estab-

lishes a legal relationship between MEI and the clients that would support a claim against client funds.

¶ 12 MEI points to no record evidence establishing its claim to any client funds independent of GBS. MEI never gathered billing information on the clients or sent invoices to the clients, but instead sent its invoices to GBS. Further, MEI and GBS agreed that MEI was entitled to payment from GBS regardless of whether the clients recovered anything. And when a dispute arose over the payment due, MEI sued GBS, not the clients. In sum, MEI contracted to provide its services to GBS, and GBS, in turn, agreed to pay MEI for those services.

¶ 13 Absent an evidentiary basis in the record for a claim against the clients' funds, MEI must, like DAT & K, make its claim through GBS. And the parties agree that with respect to funds in which GBS has an interest, the claim of DAT & K is superior to that of MEI. Accordingly, MEI has not demonstrated that the trial court erred in awarding the Disputed Funds to DAT & K.

¶ 14 Affirmed.

¶ 15 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.