FILED

10/31/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 22-0358

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 201

WESTVIEW MOBILE HOME PARK, LLC,

       Plaintiff and Appellee,

  v.

DAVID LOCKHART AND DOREEN LOCKHART,

       Defendants and Appellants.

----------------------------------------------------------

GREENER MONTANA PROPERTY
MANAGEMENT, LLC, TRAVIS MARTINEZ,
Individually and KRISTYN MARTINEZ, Individually,

       Plaintiffs and Appellees,

  v.

HYDI CUNNINGHAM,

       Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. DV-22-545 Honorable Shane Vannatta, Presiding Judge |
| | District Court of the Twenty-First Judicial District, In and For the County of Ravalli, Cause No. DV-22-187 Honorable Howard F. Recht, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants David and Doreen Lockhart:

          David J. Lockhart, Doreen Lockhart, Self-represented, Missoula, Montana

For Appellant Hydi Cunningham:

    S. Chase Rosario, Malcom & Piers PLLC, Lewistown, Montana

    Amy E. Hall, Montana Legal Services Association, Helena, Montana

For Appellee Westview Mobile Home Park, LLC:

    Eric R. Henkel, W. Bridger Christian, Christian, Samson & Baskett, PLLC, Missoula, Montana

For Appellee Westview Mobile Home Park, LLC:

    Katherine C. Holliday, Carmody Holliday Legal Services, PLLC, Missoula, Montana

For Amici:

    James A. Bowditch, Thomas J. Leonard, Boone Karlberg P.C., Missoula, Montana (for Montana Association of Realtors®)

    Robert Farris-Olsen, Morrison, Sherwood, Wilson & Deola, PLLP, Helena, Montana (for Montana Homeownership Network d/b/a/ Neighborworks Montana and the National Consumer Law Center)

---

Submitted on Briefs:  August 23, 2023

Decided:  October 31, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 This matter involves consolidated appeals regarding the interpretation of the Montana Residential Mobile Home Lot Rental Act from mobile home owners who have been evicted from their lots. David Lockhart and Doreen Lockhart (the Lockharts) appeal from the June 1, 2022 Order issued by the Fourth Judicial District Court, Missoula County, which upheld the April 27, 2022 Order for Possession issued by the Missoula County Justice Court. The Lockharts were ordered to vacate and remove all personal property from a mobile home lot owned by Westview Mobile Home Park, LLC (Westview). Hydi Cunningham (Cunningham) appeals from the July 29, 2022 Opinion and Order and the August 30, 2022 Order Denying Motion to Alter or Amend Summary Judgment and Denying Motion to Stay issued by the Twenty-First Judicial District Court, Ravalli County. These orders followed the Ravalli County Justice Court's May 10, 2022 Judgment and Order for Possession of Property and Writ of Assistance. Cunningham was ordered to vacate the mobile home lot she had been renting from Greener Montana Property Management, LLC (Greener Montana).

¶2 We address the following restated issue on appeal:

*Whether the Montana Residential Mobile Home Lot Rental Act allows a lot-only landlord to terminate a homeowner tenant's month-to-month lease when the parties' written lease allows no-cause termination upon 30 days' notice.*

¶3 We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 This consolidated case involves two evictions of mobile home owners from mobile home lots which they rented. In 2007, the Montana Legislature enacted the Montana

3

Residential Mobile Home Lot Rental Act (MRMHLRA or the Act), which is codified in Title 70, chapter 33, MCA. 2007 Mont. Laws ch. 267, §§ 7-51. The provisions of the Act govern the present disputes, and we are called to interpret the meaning of the Act as it relates to no-cause terminations.

¶5      The Lockharts are the owners of a mobile home. In 2015, they entered into a "month to month" lot rental agreement with Westview to rent a mobile home lot at 4736 Graham Street in Missoula. The rental agreement asserted it was governed by the Montana Residential Landlord and Tenant Act of 1977 and provided that "Tenant's occupancy will be from month to month, and the tenancy may be terminated by either Landlord or Tenant, upon providing a written thirty (30) day notice of termination." On January 10, 2022, Westview served the Lockharts with a Notice of Lease Termination, informing them their lease was terminated effective February 13, 2022. The Lockharts did not vacate the mobile home lot, so Westview filed a complaint for possession in the Missoula County Justice Court. The justice court ultimately determined Westview was not required to have cause to terminate the Lockharts' lease, ordered Westview was entitled to immediate possession of the mobile home lot, and gave the Lockharts 30 days to "remove all personal possessions, including but not limited to the mobile home, from said mobile home lot."[1]

---

[1] While Westview's complaint for possession asserted the Lockharts had breached the lease in various ways, such as parking incorrectly and failing to upkeep the lot, the justice court hearing proceeded on whether the Lockharts could be evicted, without cause, based upon Westview giving them 30 days' notice. The factual issues regarding a for-cause eviction of the Lockharts were not litigated before either lower court in this matter and we do not address them here.

4

On appeal, the Missoula County District Court affirmed the justice court's order, providing another 30 days for the Lockharts to vacate and remove all personal property from the lot.

¶6 Cunningham also owns a mobile home. In 2008, she purchased the mobile home, which was already located on the subject lot at 2629 (aka 2633) Dorothy Drive in Victor, and began residing there while renting the lot. In 2015, Cunningham and Greener Montana entered into a lot rental agreement for a term of one month, from December 1, 2015, to January 1, 2016, which would "automatically renew from month to month on the same terms and conditions as herein, and so on until terminated by either party giving to the other at least 30 days written notice prior to the expiration of the current term." On January 12, 2022, Greener Montana served Cunningham with a "30-Day Notice to Quit and Terminate the Rental Agreement," which required Cunningham to surrender possession of the lot to Greener Montana by March 1, 2022. Cunningham did not vacate the lot, and Greener Montana filed an action for possession in the Ravalli County Justice Court. The justice court issued an order granting possession to Greener Montana on May 10, 2022, and gave Cunningham 72 hours to vacate the premises. On appeal, the Ravalli County District Court reviewed the MRMHLRA as it related to no-cause termination, determined Greener Montana's termination of Cunningham's month to month lease without cause was valid, and gave Cunningham 30 days to "vacate the premises and remove her mobile home."

¶7 The Lockharts and Cunningham each appealed. We consolidated the appeals as both call on this Court to interpret the scope of the Montana Residential Mobile Home Lot Rental Act as it relates to the no-cause terminations of month-to-month lot rental agreements of mobile home owners.

5

**STANDARD OF REVIEW**

¶8     The interpretation and construction of a statute is a matter of law, which we review de novo. *Hines v. Topher Realty, LLC*, 2018 MT 44, ¶ 12, 390 Mont. 352, 413 P.3d 813 (citation omitted).

**DISCUSSION**

¶9     *Whether the Montana Residential Mobile Home Lot Rental Act allows a lot-only landlord to terminate a homeowner tenant's month-to-month lease when the parties' written lease allows no-cause termination upon 30 days' notice.*

¶10     This Court has not previously had cause to interpret the termination provisions of the MRMHLRA, which was enacted by the Legislature in 2007, and this case is a matter of first impression.  The Lockharts and Cunningham assert the Act prohibits no-cause termination of mobile home lot rent agreements.  Westview and Greener Montana (occasionally "the landlords"), meanwhile, contend the prohibition of no-cause termination in mobile home lot rent agreements would lead to absurd results and that the Act specifically contemplates month-to-month tenancies which may be terminated without cause.

¶11     "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.  Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."  Section 1-2-101, MCA.  "Statutory interpretation, the goal of which is to give effect to the legislature's intent, begins with the text of the statute."  *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666.  "We must, to the extent possible, effect

6

the manifest intent of the Legislature in accordance with the clear and unambiguous language of its enactments in context, without resort to other means of construction." *Babcock v. Casey's Mgmt., LLC*, 2021 MT 215, ¶ 6, 405 Mont. 237, 494 P.3d 322. We do this "by first attempting to construe the subject term or provision in accordance with the plain meaning of its express language, in context of the statute as a whole, and in furtherance of the manifest purpose of the statutory provision and the larger statutory scheme in which it is included." *Babcock*, ¶ 6.

¶12 As this case concerns the interpretation and application of a statute, the MRMHLRA, we begin with the relevant text. The Act "applies to landlord-tenant relationships in which the landlord is renting a lot to the tenant for placement of the tenant's mobile home," § 70-33-104(1), MCA, but does not apply to the "combined rental of the lot and mobile home, when the landlord owns both," because that situation is "covered by the Montana Residential Landlord and Tenant Act of 1977." Section 70-33-104(3), MCA. Westview and Greener Montana assert the contentions of the Lockharts and Cunningham regarding no-cause terminations are completely undercut by language included in § 70-33-201, MCA:

> Unless the rental agreement provides otherwise:
>
> (a) the tenant shall pay as rent the rental value for the use and occupancy of the lot as determined by the landlord;
>
> (b) rent is payable at the landlord's address or using electronic funds transfer to an account designated for the payment of rent by the landlord;
>
> (c) periodic rent is payable at the beginning of a term that is a month or less and otherwise in equal monthly installments at the beginning of each month;

(d) rent is uniformly apportionable from day to day;

(e) the tenancy is from month to month; and

(f) if either party terminates the rental agreement without cause prior to the expiration date of the lease term, the aggrieved party is entitled to monetary damages up to 1 month's rent or an amount that is agreed on in the rental agreement, which may not exceed 1 month's rent. Landlords shall follow 70-33-426(2) and are entitled to rent from defaulting tenants up to the date a new tenancy starts or the date the rental agreement term expires.

Section 70-33-201(2), MCA. Specifically, the landlords contend this statute's references to month-to-month tenancies and monetary damages due to an aggrieved party following a termination without cause in subsections (e) and (f) show the Legislature, rather than prohibiting terminations without cause, actually provided for them.

¶13 The Lockharts and Cunningham, meanwhile, assert no-cause terminations such as the ones at issue here are prohibited because they are not provided for in § 70-33-433, MCA, which provides the "[g]rounds for termination of a rental agreement." That statute states, in full:

(1) If there is a noncompliance by the tenant with the rental agreement or with a provision of 70-33-321, the landlord may deliver a written notice to the tenant pursuant to 70-33-106 specifying the acts or omissions constituting the noncompliance and stating that the rental agreement will terminate upon the date specified in the notice that may not be less than the minimum number of days after receipt of the notice provided for in this section. The rental agreement terminates as provided in the notice for one or more of the following reasons and subject to the following conditions:

(a) nonpayment of rent, late charges, or common area maintenance fees as established in the rental agreement, for which the notice period is 7 days;

8

(b) a violation of a rule other than provided for in subsection (1)(a) that does not create an immediate threat to the health and safety of any other tenant or the landlord or manager, for which the notice period is 14 days;

(c) a violation of a rule that creates an immediate threat to the health and safety of any other tenant or the landlord or manager, for which the notice period is 24 hours;

(d) late payment of rent, late charges, or common area maintenance fees, as established in the rental agreement, three or more times within a 12-month period if written notice is given by the landlord after each failure to pay, as required by subsection (1)(a), for which the notice period for termination for the final late payment is 30 days;

(e) a violation of a rule that creates an immediate threat to the health and safety of any other tenant or the landlord or manager whether or not notice was given pursuant to subsection (1)(c) and the violation was remedied as provided in subsection (3), for which the notice period is 14 days;

(f) two or more violations within a 6-month period of the same rule for which notice has been given for each prior violation, as provided in subsection (1)(a), (1)(b), or (1)(c), for which the notice period for the final violation is 30 days;

(g) two or more violations of 70-33-321(1) within a 6-month period, for which the notice period for the final violation is 14 days;

(h) any violation of 70-33-321(3), for which the notice period is as provided in 70-33-422(1);

(i) disorderly conduct that results in disruption of the rights of others to the peaceful enjoyment and use of the premises, for which the notice period is 7 days;

(j) any other noncompliance or violation not covered by subsections (1)(a) through (1)(i) that endangers other tenants or mobile home park personnel or the landlord or manager or causes substantial damage to the premises, for which the notice period is 14 days;

(k) conviction of the mobile home owner or a tenant of the mobile home owner of a violation of a federal or state law or local ordinance, when the violation is detrimental to the health, safety, or welfare of other tenants

9

or the landlord or manager or the landlord's documentation of a violation of the provisions of Title 45, chapter 9, for which the notice period is 14 days;

(l) changes in the use of the land if the requirements of subsection (2) are met, for which the notice period is 180 days;

(m) any legitimate business reason not covered elsewhere in this subsection (1) if the landlord meets the following requirements:

(i) the termination does not violate a provision of this section or any other state statute; and

(ii) the landlord has given the mobile home owner or tenant of the mobile home owner a minimum of 90 days' written notice of the termination.

(2) If a landlord plans to change the use of all or part of the premises from mobile home lot rentals to some other use, each affected mobile home owner must receive notice from the landlord as follows:

(a) The landlord shall give the mobile home owner and a tenant of the mobile home owner at least 15 days' written notice that the landlord will be appearing before a unit of local government to request permits for a change of use of the premises.

(b) After all required permits requesting a change of use have been approved by the unit of local government, the landlord shall give the mobile home owner and a tenant of the mobile home owner 6 months' written notice of termination of tenancy. If the change of use does not require local government permits, the landlord shall give the written notice at least 6 months prior to the change of use. In the notice the landlord shall disclose and describe in detail the nature of the change of use.

(c) Prior to entering a rental agreement during the 6-month notice period referred to in subsection (2)(b), the landlord shall give each prospective mobile home owner and any tenant of the mobile home owner whose identity and address have been provided to the landlord written notice that the landlord is requesting a change in use before a unit of local government or that a change in use has been approved.

(3) Subject to the right to terminate in subsections (1)(d) through (1)(k), if the noncompliance described in subsections (1)(a) through (1)(c) is remediable by repairs, the payment of damages, or otherwise and the tenant

adequately remedies the noncompliance before the date specified in the notice, the rental agreement does not terminate as a result of that noncompliance.

(4) For purposes of calculating the total number of notices given within a 12-month period under subsection (1)(d), only one notice for each violation per month may be included in the calculation.

Section 70-33-433, MCA.[2]

¶14 The Act contains separate provisions which each party asserts are controlling and dispositive. In interpreting statutes, we do not merely read single sentences out of context. Indeed, "[w]here there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA. We must, then, harmonize the relevant provisions of the statute and avoid an absurd result.

¶15 The landlords correctly note that the Act both contemplates month-to-month tenancies, § 70-33-201(2)(e), MCA, and provides for monetary damages when a rental agreement is terminated without cause. Section 70-33-201(2)(f), MCA. Section 70-33-201(2)(f), MCA, dealing with monetary damages for termination of a lease without cause is a recent addition to the Act, added in 2021. 2021 Mont. Laws ch. 536, § 11. Where their argument fails is in its contention these subsections allow for the no-cause termination of the periodic tenancies at issue here.

---

[2] The Dissent claims this statute's exhaustive list of reasons for a landlord's termination of a lease is not actually exhaustive because it does not provide means for a tenant to terminate the lease. Dissent, ¶ 31. Obviously, the section listing both the requirements for a landlord to terminate and the notice period a landlord must give does not apply to a tenant.

¶16 Both the Lockharts and Cunningham had lot rental agreements which were originally for a specified term before becoming month-to-month periodic tenancies. A month-to-month tenancy is contemplated as the standard for a lot rental agreement in Montana. Section 70-33-201(2)(e), MCA. When the initial terms at issue here expired without any party giving notice of termination, the lot rental agreements automatically renewed as month-to-month periodic tenancies. "A month-to-month lease, or any other periodic tenancy, does not simply '*expire*,' . . . it must be '*terminated*,' and it is the act of giving notice that triggers the termination of the lease." *Coleman v. Thomas*, 2000 UT 53, ¶ 14, 4 P.3d 783 (emphasis in original). "Since the periodic tenancy is in fact a continuing relationship, the general rule is that each successive period is treated as a continuation of the original tenancy, unless the parties specifically provide for a different result." Restatement (Second) of Property, *Landlord & Tenant* § 1.5 cmt.c (1977).[3] The periodic tenancies here did not expire and renew themselves each month, but each new period was simply an extension of the original period.

¶17 The MRMHLRA enumerates several grounds for termination of a mobile home lot lease and provides for specific notice periods. Section 70-33-433, MCA. A landlord may terminate the agreement for cause due to nonpayment of rent, late payments, violations of park rules, disorderly conduct, and criminal violations. Section 70-33-433(1)(a-k), MCA. The statute also provides specific grounds for termination other than for cause provided by

---

[3] The Act provides that it is supplemented by the common law principles of law and equity, unless superseded by provisions of the Act. Section 70-33-105, MCA.

the tenant's behavior.  Subsection (1)(l) provides that a landlord can terminate the rental agreement when it wants to change the use of the land, and provides for a 180-day notice period.  Subsection (1)(m) provides that a landlord can terminate the rental agreement for a "legitimate business reason," and provides for a 90-day notice period.  The language of the termination statute is somewhat ambiguous, however, in that it begins with an introductory clause stating that "[i]f there is a noncompliance by the tenant" with the rental agreement a landlord must give a tenant an eviction notice as specified by the Act, before listing 11 situations which involve noncompliance—nonpayment of rent, violation of park rules, disorderly conduct, etc.—and 2 situations which plainly do not involve noncompliance by a tenant—the landlord deciding to change the use of the land or the landlord putting forth a "legitimate business reason"—each of which provide notice periods longer than 30 days.  Because the statute is subject to two reasonable interpretations—either (1) no-cause terminations are not allowed, or (2) there must be a noncompliance by a tenant before a landlord is allowed to change the use of his or her land or evict a tenant for a "legitimate business reason"—we consult the legislative history.  *See City of Missoula v. Pope*, 2021 MT 4, ¶ 16, 402 Mont. 416, 478 P.3d 815.  The Dissent criticizes the Court for determining the Act could be ambiguous regarding the change of land and/or legitimate business reasons for termination, asserts such is "clearly not a reasonable reading" of the provision, and handwaves it away.  Dissent, ¶ 29.  The text of the statute is the text of the statute, and it says what it says.  The Dissent's position is inconsistent.  If, as the Dissent interprets the statute, the legislative language used allows no-cause evictions of homeowners by potentially unscrupulous landlords, the statutory

language would then also restrict the change of land or legitimate business reason to first be premised on a noncompliance by a tenant. The Dissent's dismissal of those provisions as not reasonable (and presumably therefore not enforceable) would be a results-based reading of the text, as that is not what the text actually says. This potential ambiguity and the dispute it raises demonstrates the need to consult the legislative history. *See Pope*, ¶ 16.

¶18 A review of the hearing testimony on HB 456, which would later be codified as the MRMHLRA, clearly indicates the drafter's intent to move the provisions relating to mobile homes from the Landlord and Tenant Act to its own section of the Montana Code. The bill's sponsor, Walter McNutt, who noted he owned a mobile home park, testified to both the House and Senate committees that the bill's intent was to make no substantive changes to the law as it related to mobile home owners and landlords, but to make the law easier to find by taking it out of the Landlord and Tenant Act and giving it its own section. The grounds for termination statute, which is substantively identical to that now found in § 70-33-433, MCA, was, at the time, found in § 70-24-436, MCA (2005), and provided identical grounds to terminate the rental agreement of "a tenant who rents space in a mobile home park but does not rent the mobile home[.]" Section 70-24-436(1), MCA (2005). This section was first enacted by HB 245 in 1993. 1993 Mont. Laws ch. 470, § 2. At that time, the Legislature set forth its explicit reasons for adopting a grounds for termination statute unique to mobile home owners who rented lots from landlords:

> WHEREAS, Montana residents currently face a housing crisis that includes a lack of affordable housing and a lack of available mobile home park spaces; and

14

WHEREAS, mobile homes are not "mobile" without substantial moving costs and the potential for substantial damage to the mobile homes; and

WHEREAS, under 70-24-441 landlords of mobile home parks may, without supplying a reason, evict tenants who rent space in mobile home parks; and

WHEREAS, if evicted unfairly, mobile home owners who rent space in mobile home parks may be forced to sell their mobile homes at a fraction of their costs and within an unreasonable amount of time (30 days pursuant to 70-24-441) in order to comply with the eviction.

THEREFORE, the Legislature of the State of Montana finds it necessary to define justifiable and reasonable grounds on which landlords may evict mobile home owners who rent space in mobile home parks.

1993 Mont. Laws ch. 470, Preamble. Since the adoption of the Montana Residential Landlord and Tenant Act of 1977, that act had provided (and still does):

(1) The landlord or the tenant may terminate a week-to-week tenancy by a written notice given to the other at least 7 days before the termination date specified in the notice.

(2) The landlord or the tenant may terminate a month-to-month tenancy by giving to the other at any time during the tenancy at least 30 days' notice in writing prior to the date designated in the notice for the termination of the tenancy.

Section 70-24-441, MCA. After adopting a grounds for termination statute unique to mobile home owners who rented lots, the Legislature made clear that no-cause evictions of such mobile home owners were banned by explicitly noting the no-cause termination provision of the Landlord and Tenant Act did "not apply to a tenant who rents space for a mobile home in a mobile home park but does not rent the mobile home." Section 70-24-441(4), MCA (2001). This provision banning no-cause evictions was still in place when Representative McNutt testified the bill was not making any substantive changes to the law regarding mobile home owner landlord-tenant relations, and was deleted from the Landlord

15

and Tenant Act upon the passage of the MRMHLRA.[4] 2007 Mont. Laws ch. 267, § 6. The legislative history makes it abundantly clear that the Legislature specifically sought to ban no-cause evictions of mobile home owners who rented lots by enacting the grounds for termination statute in 1993, strengthened those protections in 2001, and did not intend for them to vanish by enacting the Act in 2007.

¶19    The landlords' interpretation of the Act, and their assertion it allows for no-cause terminations of rental agreements with 30-day notices, would render § 70-33-433(1)(l-m), MCA, superfluous. If the Act did indeed provide for no-cause termination, a landlord could simply terminate any and all of its leases without cause and with 30 days' notice to avoid the lengthier notice requirements involved when changing land use or asserting a "legitimate business reason." In addition, there would be no purpose to requiring lengthier

---

[4] Despite asserting the "lack of ambiguity in the Act forecloses consideration of [the legislative] history[,]" the Dissent asserts the legislative history demonstrates the legislature intended to take away protections the Montana Legislature explicitly provided to tenants who owned their mobile home and rented lot space. Dissent, ¶ 29 n.1. Such an assertion is not plausible upon listening to the actual hearing. The entire presentation by Representative McNutt was focused on how no substantive changes were being made to the law as it existed. Doing away with a unique tenant protection applicable to a unique class of tenants—mobile home owners who rent lot space— which the Legislature repeatedly recognized as important over the preceding decade-plus is a pretty substantive change. As previously noted, after adopting a grounds for termination statute unique to mobile home owners who rented lots, the Legislature made clear for years prior to the passage of the MRMHLRA that no-cause evictions of such mobile home owners were banned by explicitly noting the no-cause termination provision of the Landlord and Tenant Act did not apply to a tenant who rents space for a mobile home in a mobile home park but does not rent the mobile home, the provision banning no-cause evictions was still in place when Representative McNutt testified the bill was not making any substantive changes to the law regarding mobile home owner landlord-tenant relations, and was only deleted from the Landlord and Tenant Act upon the passage of the MRMHLRA because all provisions regarding tenant-owned mobile homes were deleted from the Landlord and Tenant Act once the MRMHLRA passed. In light of this, we reject the Dissent's claim the legislative history "demonstrates the opposite legislative intent" (meaning the Legislature specifically meant to do away with that protection).

16

notice periods at all if the month-to-month tenancies at issue here, and contemplated as the standard by the Act, § 70-33-201(2)(e), MCA, were not periodic tenancies but continually expired and renewed themselves each month. The 90-day and 180-day notice periods provided for in subsections (l) and (m) would never be relevant in such a situation as the 30-day lease could simply not be renewed, eviscerating the Legislature's goal for mobile home owners to not face being "forced to sell their mobile homes at a fraction of their costs and within an unreasonable amount of time," but rather to have sufficient time to find a new lot, if they are able, when there is a legitimate reason for their ouster through no fault of their own. Such a result would be absurd and not in keeping with the Legislature's concern for keeping and maintaining a stock of affordable housing by providing for different and greater protections for mobile home owners through the Act, rather than merely having mobile home rental agreements be governed by the already-existing Montana Residential Landlord and Tenant Act. It would also be absurd to force a landlord to wait for a noncompliance from a tenant before being allowed to change the use of the land they own or to evict a tenant for a "legitimate business reason." The Legislature's stated intent, seeking to make no substantive changes to the law as it existed, cannot, and does not, allow for such bizarre results.

¶20     Harmonizing the statute, then, leads to the straightforward conclusion that no-cause terminations of mobile home lot rental agreements are banned by the statute, which specifically lists both reasons for terminating an agreement and the notice periods required. Section 70-33-433, MCA. While the Act now provides for a penalty if a no-cause termination occurs, § 70-33-201(2)(f), MCA, we cannot find this subsection somehow

17

allows for a no-cause termination in the face of the lengthy list of enumerated reasons and notice periods found in § 70-33-433, MCA, none of which concern a no-cause termination with a 30-day notice period. "A landlord and a tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule or law." Section 70-33-201(1), MCA. While rental agreements may include terms and conditions not specifically addressed by the MRMHLRA, a "rental agreement may not require a party to . . . waive or forego rights or remedies under [Title 70, chapter 33, MCA.]" Section 70-33-202(1)(a), MCA. The rental agreements' terms regarding termination, which asserted the landlords could terminate the lease with a 30-day notice, would require the Lockharts and Cunningham to forego their rights against no-cause termination under the Act and are therefore unenforceable.

¶21 This conclusion is in harmony with the unique nature of mobile homes as compared to other rented dwellings. The United States Supreme Court has previously commented on the incongruity between the term "mobile home" and the actual mobility of those homes:

> The term "mobile home" is somewhat misleading. Mobile homes are largely immobile as a practical matter, because the cost of moving one is often a significant fraction of the value of the mobile home itself. They are generally placed permanently in parks; once in place, only about 1 in every 100 mobile homes is ever moved. A mobile home owner typically rents a plot of land, called a "pad," from the owner of a mobile home park. The park owner provides private roads within the park, common facilities such as washing machines or a swimming pool, and often utilities. The mobile home owner often invests in site-specific improvements such as a driveway, steps, walkways, porches, or landscaping. When the mobile home owner wishes to move, the mobile home is usually sold in place, and the purchaser continues to rent the pad on which the mobile home is located.

18

*Yee v. City of Escondido*, 503 U.S. 519, 523, 112 S. Ct. 1522, 1526 (1992) (internal citation omitted). Unlike an apartment dweller, who must move their personal property when evicted from a building they do not own, a mobile home owner must also make arrangements to move their not-so-mobile home, which they do own, and which can be very expensive and comes with no guarantee of finding a new lot for the home. *See W. Plaza, LLC v. Tison*, 364 P.3d 76, 82 (Wash. 2015) (noting that eviction can be more devastating for a mobile home lot tenant than for a traditional residential tenant because the tenant of a mobile home lot must not only move all of his or her personal possessions, but must also expend thousands of dollars to move his or her mobile home, as well as find a mover and a new lot for the home). Indeed, many states have a termination for cause requirement specific to mobile home lot leases. One such requirement is found in Utah, which its supreme court found "prevents a park owner from terminating residents' leases at whim and forcing them to undergo great expense uprooting their homes, along with their footings, skirting, decks, and landscaping, and attempting to secure another lease elsewhere." *Coleman*, ¶ 19. Like the Utah Supreme Court, we agree that mobile home owners who rent the lot their home resides on are due protection from "sudden, unjustifiable eviction[.]" *Coleman*, ¶ 19. Mobile home owners in Montana are protected from such evictions by the MRMHLRA's ban on no-cause evictions.

¶22 We also disagree with the landlords that prohibiting no-cause evictions would somehow grant the Lockharts and Cunningham a perpetual lease or life estates in the landlords' property. Neither the Lockharts nor Cunningham are automatically allowed to reside in their mobile home in perpetuity, as they could be evicted so long as there is cause.

19

That cause could be due to their behavior, the landlords deciding to change the use of the land, or for a "legitimate business reason." It simply cannot be for no reason at all, as the landlords wish. Though the Dissent claims this to be a "sweeping change in the law," Dissent, ¶ 34, that is simply not so. An actual sweeping change in the law would be the Legislature eliminating the ban on no-cause evictions when enacting the MRMHLRA, a ban which specifically existed in the Landlord and Tenant Act and was only deleted once the MRMHLRA passed with the intent to make "no substantive changes" to the law. Both the text of the statute (listing the requirements for a landlord to terminate) and the legislative history (making it obvious the Legislature did not intend to remove the existing ban on no-cause evictions of mobile home owners who rented lots) foreclose this interpretation of the Act. "Hundreds and perhaps thousands of Montanans" will not wake up tomorrow with the loss of a contractual right, Dissent, ¶ 37, but with their existing statutory-based tenant protections intact.

¶23 As such, the lower courts here erred in their interpretation of the Montana Residential Mobile Home Lot Rental Act. The Act does not allow for no-cause termination of a periodic tenancy such as the Lockharts' or Cunningham's. This Opinion's discussion is regarding such periodic tenancies, and we need not address the Act's effect upon a term-of-years lease. *See Coleman*, ¶ 14 n.3.

## CONCLUSION

¶24 The Montana Residential Mobile Home Lot Rental Act does not allow a lot-only landlord to terminate a homeowner tenant's month-to-month lease without cause. The no-cause termination of both leases at issue in this case were therefore illegal and invalid.

20

¶25    Reversed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

Justice Jim Rice, dissenting.

¶26    In my view, the Court's statutory analysis is flawed and its interpretation of the Montana Residential Mobile Home Lot Rental Act (MRMHLRA or the Act) is incorrect. The Court's conclusion that the Legislature has completely "banned" all no-cause terminations, *see* Opinion, ¶ 20 ("no-cause terminations of mobile home lot rental agreements are banned by the statute"), is contrary to the statute's plain language. None of the many Montana courts that have applied the statute have so held, because a ban is not contained within the text of the Act itself. *See* § 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted. . . ."). More than banning no-cause terminations, the Court also bans *periodic tenancies*. The Court's decision runs counter to common law and constitutional contract principles, and its adoption of Appellants' position that § 70-33-433, MCA, provides the exclusive grounds to terminate a tenancy, leads to absurd results: a complete ban on no-cause lease terminations, including those upon notice at the expiration of their agreed-upon terms, would likewise prohibit a

21

*tenant* from terminating a lease without cause and upon notice, in the event she wanted to move. Consistent with the absence of any language banning no-cause terminations, the Act explicitly authorizes landlords to bring an action for possession "after expiration of the term of the rental agreement or other termination of the rental agreement." Section 70-33-429(1), MCA.

¶27 I would first note as a backdrop to this discussion that the Court's interpretation of the Act appears to be premised upon the incorrect assumption that the Act only applies to mobile home tenancies subject to the Act that are month-to-month in term. While that may be understandable, given that month-to-month tenancies are at issue here, it is vital to a proper interpretation of the Act to recognize that the Legislature did not carve out month-to-month tenancies for separate treatment under the Act. The Act is applicable to all terms, including those for longer lease terms, and therefore our interpretation of the Act must also contemplate its application to all terms.

¶28 The Court's holding is premised upon its determination that a month-to-month lease, or any periodic tenancy, does not "expire" at the end of its term upon the giving of required notice, but rather must be affirmatively "terminated" in the same manner as a for-cause, mid-term, lease termination. *See* Opinion, ¶ 16 ("A month-to-month lease, or any periodic tenancy, does not simply '*expire*,' . . . it must be '*terminated*,'" citing the Utah case of *Coleman v. Thomas*, 2000 UT 53, ¶ 14, 4 P.3d 783). Under the common law, a periodic tenancy is defined as a "period to period" lease "created to endure until one of the parties has given the required notice to terminate the tenancy at the end of a period." Restatement (Second) of Property, Landlord & Tenant § 1.5 (1977). It has been recognized

22

in Montana for many years. *See Boucher v. St. George*, 88 Mont. 162, 168, 293 P. 315, 316 (1930). Fitting squarely within that definition, the "month to month" lease agreements at issue in these cases provide: "[t]his Rental Agreement shall automatically renew from month to month on the same terms and conditions as herein, and so on until terminated by either party giving to the other at least 30 days written notice prior to the expiration of the current term." Notice, therefore, is the means of ending such a tenancy at its expiration of term, as even *Coleman* recognized ("it is the act of giving notice that triggers the termination of the lease."). The same is true for other periodic tenancies, such as year-to-year. However, under the Court's interpretation of the Act, all periodic tenancies in the mobile home context are eliminated because the giving of proper notice is no longer sufficient to bring the lease to an end upon expiration of the term. Compliant tenants would thus remain on the landlord's property indefinitely—and could not even voluntarily leave without cause—unless either the tenant or the landlord could establish a basis to terminate the agreement for cause, such as proving a "legitimate business reason" to end the contractual relationship under § 70-33-433, MCA. As Appellee Westview argues, under this interpretation, "month-to-month tenancies cease to exist, lease terms never expire, and tenancies last indefinitely unless and until they can be terminated for cause." This interpretation could effectively force landlords and tenants to remain in contracts against their will, unless taking on the burden of further action, a clear infringement upon the right to freely contract. More immediately, the text does not support this interpretation. "Our function as an appellate court is to ascertain and carry out the Legislature's intent by

23

looking at the plain meaning of the words in the statute." *State v. Booth*, 2012 MT 40, ¶ 11, 364 Mont. 190, 272 P.3d 89.

¶29    The Act is not ambiguous, and the Court's proposition that it is subject to alternative readings is incorrect.  The Court's second proffered alternative, Opinion, ¶ 17, is clearly not a reasonable reading of the provision, and the Court later declares this position to be absurd and bizarre.  *See* Opinion, ¶ 19.  In any event, the Act is clear.[1]  Section 70-33-201(1), MCA, provides that landlords and tenants may include in a rental agreement "terms and conditions not prohibited by this chapter or other rule or law."  The provision recognizes, and defaults to, month-to-month terms among possible tenancies:  "Unless the rental agreement provides otherwise: . . . the tenancy is from month to month."  Section 70-33-201(2)(e), MCA.  Then, the provision recognizes that a landlord or the tenant may attempt to "terminate[] the rental agreement *without cause* prior to the expiration date of

---

[1]  To conclude that the Legislature intended to exclude mobile home tenancies from no-cause terminations, the Court refers to legislative history regarding a prior version of the Act, § 70-24-441 (2003), which included language explicitly precluding mobile home tenancies from notice terminations.  Opinion, ¶ 18.  However, that provision was repealed, 2007 Mt. Ch. 267, and no such language exists in the current Code.  If anything, this history demonstrates the opposite legislative intent, but more importantly, the lack of ambiguity in the Act forecloses consideration of this history. Even so, the Court reasons that it would "be absurd to force a landlord to wait for noncompliance from a tenant before being allowed to change the use of the land they own or to evict a tenant for a 'legitimate business reason.'"  Opinion, ¶ 19.  I agree that the Court's second interpretation of § 70-33-433(1), MCA,  is entirely absurd.  Although the introductory language of § 70-33-433(1), MCA, is prefaced as applying to those situations in which "there is a noncompliance by the tenant," the minimum notice periods of the various subsections clearly illustrate that the subsections of § 70-33-433(1)(l-m), MCA, are not constrained by a tenant's violation.  Subsections (a-k) require at most 30 days' notice prior to eviction, while (l-m) require, at minimum, 180 and 90 days respectively.  If subsections (l-m) were indeed contingent on the tenant's violation under subsections (a-k), then the landlord would *always* have a shorter notice period available under subsections (a-k), thereby rendering the notice periods of (l-m) superfluous.  As the Court notes, we cannot interpret a statute so as to render any language superfluous. Thus, the Court's second interpretation is clearly invalid.

the lease term," in which case the provision sanctions the party so acting by assessment of monetary damages. Section 70-33-201(2)(f), MCA (emphasis added). This provision necessarily recognizes that either party may voluntarily allow a lease to expire in accordance with its term, upon notice and without cause, as opposed to "prior to" the expiration date, and that such expiration is not sanctioned and is not improper. This recognition is continued throughout the Act:

> If the tenant remains in possession without the landlord's consent *after expiration of the term of the rental agreement or other termination of the rental agreement*, the landlord may bring an action for possession.

Section 70-33-429(1), MCA (emphasis added). Here, the Act unambiguously recognizes termination can occur in *both* ways: simple (no-cause) expiration of the term *or* termination on other grounds, for cause. This statute is essentially rendered void by the Court's complete ban on no-cause terminations. Further:

> If the tenant abandons the lot, the landlord shall make reasonable efforts to rent the lot at fair rental. If the landlord rents the lot for a term beginning *before the expiration of the rental agreement*, the rental agreement terminates as of the date of the new tenancy.

Section 70-33-426(2), MCA (emphasis added). As the District Court correctly stated in *Greener Montana*, "[n]owhere in the Act does it state that a rental agreement does not terminate at the end of its term, nor does the Act forbid termination for no cause." Rather than banning the termination of a lease upon its expiration, as the Court concludes, the Act specifically contemplates it.

¶30 The Court's conclusion that no-cause expirations of leases are banned is obviously inconsistent with the Act's explicit use of that very concept. The Court's analytical error

25

is rooted in departing from the text and relying upon foreign authority, *Coleman*. The *Coleman* court derived its interpretation from *Thompson on Real Property*, which states: "periodic tenancies never expire automatically, because they are continuous by definition. Termination by either party requires giving proper notice to the other party." 4 *Thompson on Real Property* § 39.06(b)(2) (2023). The *Coleman* court concluded that the termination of the periodic tenancy was improper because Utah's statute did not allow for no-cause termination. *Coleman*, ¶ 21. The problems here are two fold: 1) as noted above, Montana's Act does not provide, contrary to *Thompson on Real Property*,[2] that periodic tenancies "never expire," but rather repeatedly recognizes them and their termination upon term; and 2) Utah's statute expressly provides that "[a] mobile home park or its agents may not terminate a lease or rental agreement *upon any ground other than as specified in this chapter*." Section 57-16-4(1), Utah Code Annotated (emphasis added). Neither § 70-33-433, MCA, nor any other section of the current Act, provides such a restriction upon the right to allow a lease to expire upon its term.

¶31    The Court concludes that § 70-33-433, MCA, provides an exclusive list of avenues to termination, stemming solely from the observation that the statute delineates a "lengthy list of enumerated reasons and notice periods." Similarly, Appellant Cunningham argues that § 70-33-433, MCA, "prohibits any other ground or notice provision not listed." However, these conclusions are not supported by the text. Every basis for termination listed in § 70-33-433, MCA, is for the purpose of terminating the lease "prior to" the

---

[2] Montana's Act can be reconciled with *Thompson on Real Property* if *Thompson* is read to permit the expiration of tenancies at the end of the agreed term, upon proper notice.

expiration of its term, whether by a "noncompliance" breach by the tenant or by a proposed change in use or legitimate business reason established by the landlord. In other words, all of these listed reasons are for a statutory cause. Then, in what would be a glaring omission if this was truly the "exclusive" means a lease could be terminated, there is no means mentioned in the statute by which a *tenant* can terminate the lease. If we are to interpret § 70-33-433, MCA, as the exclusive means by which a lease may be terminated, then tenants are incapable of terminating their periodic tenancy. They could be forced to continue paying rent and living on the designated lot until either the landlord terminates their lease in compliance with § 70-33-433, MCA, or the tenant chooses to breach the lease and pay the consequences—a severe infringement on the right to contract. This is an absurd result. Rather, this provision, addressing only statutory causes for termination, simply does not address or encompass termination of the agreement upon the expiration of its term (and upon notice), which is clearly recognized throughout the Act.

¶32 The Court's interpretation not only bans no-cause terminations, but necessarily eliminates true month-to-month tenancies, despite the Act's recognition and establishment of month-to-month tenancies as the default tenancy. Section 70-33-201(2)(e), MCA. Even upon establishing a legitimate business reason, a landlord is required to provide a tenant with 90 days' notice. Section 70-33-433(1)(m)(ii), MCA. The 90-day notice requirement effectively precludes the possibility of forming less than a minimum four-month tenancy because the tenancy will always last an additional three months to provide the requisite notice—if there is cause to do so.

27

¶33 The Court reasons that, if no-cause terminations were allowed upon 30 days' notice, "a landlord could simply terminate any and all of its leases without cause and 30 days' notice to avoid the lengthier notice requirements" ascribed in § 70-33-433(1)(l-m), MCA, thereby rendering those provisions "superfluous." *Opinion*, ¶ 17. Recall that the Act does not apply only to subject tenancies that are month-to-month in term, but to such leases of all terms. This provision would thus be applicable to leases with longer terms and longer notice periods than the 30-day notice provision applicable to month-to-month tenancies. Under the common law, notice to end a periodic tenancy is proper if it occurs in accordance with the contractual terms, and in the absence of such terms, "the common law require[s] notice six months prior to the end of the period, if the period is from year to year, and notice equal to the length of the period in other instances." Restatement (Second) of Property, Landlord & Tenant § 1.5 cmt. f (1977). Thus, for example, in the case of a year-to-year periodic tenancy, the statute's notice requirements would expressly shorten the notice required under common law, and with such effect, are not superfluous. It should be emphasized that the Act does not require the parties to enter month-to-month tenancies, and landlords and tenants who are mutually interested in long-term relationships can negotiate for a different term, such as year-to-year, and longer notice provisions. But, in any event, this provision is not superfluous.

¶34 Regarding alteration of the common law, "enactment of a statute does not necessarily result in field preemption of the common law, and 'a statute is not presumed to work any change in the rules of the common law beyond what is expressed in its provisions or fairly implied in them in order to give them full operation.'" *Phipps v. Old Republic*

28

*Nat'l Title Ins. Co.*, 2021 MT 152, ¶ 20, 404 Mont. 336, 489 P.3d 507 (citing *Haker v. Sw. R.R.*, 176 Mont. 364, 368-69, 578 P.2d 724, 727 (1978)). Enacting a complete ban on month-to-month tenancies is a sweeping change in the law. In my view, it defies reason to conclude the Legislature would have enacted a complete ban upon a standard lease provision without saying so—and, of course, it did not, as it continued to recognize expiration of leases upon term. The Legislature could have followed the lead of other states who have enacted more comprehensive restrictions, such as Utah, but again, did not. We have previously held that "[a] fundamental tenet of contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws." *Newlon v. Teck Am., Inc.*, 2015 MT 317, ¶ 15, 381 Mont. 378, 360 P.3d 1134. That freedom to contract entails the freedom not to contract, and accordingly, the freedom to end a contract subject to contractual liabilities. *See Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250. While the state surely has authority to limit contractual rights, the conclusion that the Act impliedly incorporates a complete ban results in a clear restraint upon contractual freedom on both parties including, as noted above, compelling them to continue contracting.

¶35 In response to this Dissent, the Court offers that tenants can terminate leases at the expiration of term based upon the common law. That is exactly the point of this discussion: interpreting the statute without consideration of the longstanding common law leads to absurd results. The Court now states the common law permits a tenant to terminate a tenancy at the expiration of the term, but not a landlord. However, the common law provides the same termination right to landlords, unless the Legislature clearly alters that

29

right. But it has not. Rather, it explicitly recognizes a landlord's right to bring an action for possession either "after expiration of the term of the rental agreement or other termination of the rental agreement." Section 70-33-429(1), MCA.

¶36 The Legislature's wording is not ambiguous; it simply does not go as far as Appellants would prefer. The Act clearly fits together well: it authorizes month-to-month mobile home tenancies, repeatedly recognizes the termination of leases upon expiration of term or for cause, and provides differing timeframes for cause terminations in situations involving noncompliant tenants and other statutory causes. It does not ban particular tenancies or ban no-cause terminations based upon expiration of term. The Court has imputed rules never stated by the Legislature, and which upend common law principles. Critically, the Legislature repealed the prior provision of the Act that explicitly precluded mobile home tenancies from notice terminations, but the Court has reinserted it.

¶37 The Court's decision goes far beyond even a strained interpretation of the Act. The Court has declared that all *existing* month-to-month tenancies are permanent, which cannot end according to their own terms, but must continue until statutory cause for termination is established. Hundreds and perhaps thousands of Montanans, landlords and tenants alike, have voluntarily entered rental agreements that they understood, based upon the contract language authorized by the Act, they could bring to an end at a time of their choosing, but will wake up tomorrow with the loss of that contractual right. Such an infringement upon

30

the ability to act on contractual rights is a violation of their constitutional rights. The Legislature did not provide for this result, and I cannot agree to it.[3]

¶38    I would affirm.

/S/ JIM RICE

Justice Dirk Sandefur joins in the dissenting Opinion of Justice Rice.

/S/ DIRK M. SANDEFUR

---

[3] In technical terms, the Court's decision turns all mobile home month-to-month tenancies into life estates on condition, which continue indefinitely until the occurrence of a subsequent condition or violation, here, satisfaction of legal cause. *See Estate on condition, Black's Law Dictionary* (7th ed. 1999).